LEHIGH *v.* STANDARD TIE CO.

1. SALES—ACTION FOR PRICE — INSPECTION — EVIDENCE—SUFFICI-
ENCY.

In an action for the price of railroad ties sold and delivered,
evidence examined, and *held*, sufficient to go to the jury on
the issue whether a claimed inspection was such as the con-
tract of sale provided.

2. EVIDENCE—EXPERTS—COMPETENCY.

A witness who states he has shipped railroad ties to a certain
market and seen the reports of the inspection sent back from
there may state what an inspection according to the rules of
that market would show with regard to a certain lot of ties
with which he is familiar.

3. SAME — SALES — ACTION FOR PRICE — QUANTUM MERUIT — EVI-
DENCE—SUFFICIENCY.

In an action for the price of goods sold and delivered, the con-
tract price is some evidence of their value, and is sufficient
on that point to support a recovery on the quantum meruit.

Error to Mackinac; Shepherd, J. Submitted June 7,
1907. (Docket No. 51.) Decided July 1, 1907.

Assumpsit by Mark Lehigh and James G. McClintock,
copartners as Lehigh & McClintock, against the Stand-
ard Tie Company for goods sold and delivered. There
was judgment for plaintiffs, and defendant brings error.
Affirmed.

*Henry Hoffman*, for appellant.

*James McNamara & Son*, for appellees.

MONTGOMERY, J. Plaintiffs contracted with defend-
ant to furnish 8,000 to 10,000 cedar ties and 12,000 to
15,000 cedar posts, to be delivered on rail of vessel at St.
Martin's Bay, Mackinac county, on or before June 1, 1905.
The contract also provided that for ties made from green

timber plaintiffs should receive 32 cents, and for standard
ties made from dry timber 30 cents.   It also provided that
10 per cent. of the ties might be No. 2's at 12 cents each
on the rail of the vessel.   The declaration was special on
the contract, averring performance, and also on the common
counts.   It was shown and averred in the declara-
tion that, after the making of this contract, it was agreed
between the parties that in place of an inspection to take
place at St. Martin's Bay as the ties were loaded, which
was at first contemplated, plaintiffs should accept Chicago
inspection.   The language in which this agreement was
made is as follows:

"We will accept Chicago inspection on our ties instead
of having Mr. St. James inspect them here."

The ties were shipped to Chicago.   No inspector was
agreed upon between the parties; but the defendant, in
making a sale of the ties to the Chicago & Northwestern
Railroad Company, agreed to accept inspection of the
company's inspector, Mr. Clair.   His inspection of the
ties showed a total of 5,906 No. 1 ties and 6,522 rejects.
The plaintiffs offered testimony tending to show that the
ties which were loaded and shipped to the defendant
would run 22 to 23 per cent. No. 2's, and the balance,
with the exception of possibly 2 per cent. rejects, would
be No. 1's.   The circuit judge charged the jury that the
plaintiffs had the burden of proof, and that the parties
had agreed to abide by an inspection, and any mistake in
judgment which the inspector made they must abide by,
and that, if the inspector used his judgment fairly or if
he used his judgment without any intention to favor one
side or the other, his inspection must govern; and, if the
jury should find that the inspector did not use his best
judgment, then they should arrive at the fair value the
best way they could.

It is the contention of the defendant that there was no
evidence tending to impeach the inspection, and that the
verdict should have been directed for the defendant.   We

think the charge of the court sufficiently favorable to the defendant. This is not a case in which a particular inspector has been agreed upon by the parties. Plaintiffs were given no choice in this respect. The sole effect of the modification of the original contract was to provide that Chicago inspection should govern the parties. That we take to mean that the rule which controlled the Chicago inspection as to what ties should be considered No. 2's and what No. 1's would control; and this implied that an honest inspection of the ties should be made by such rules, and that such inspection should be made with reference to the contract between these parties. If there were no fact or circumstance to cast doubt upon the testimony of the inspector, or to raise a fair question as to whether the inspection represents accurately the quality of these ties according to the rules of the Chicago inspection, there would be no question for the jury. But we think there was enough to raise a fair question for the jury. It is a significant fact that although the parties contracted with reference to No. 2 ties and recognized such a grade, and although the testimony of the plaintiffs tend to show that there were at least 22 to 23 per cent. of No. 2 ties in these shipments, the inspection made at Chicago shows a total inspection of over 13,000 ties and not one No. 2 tie found. It also appears that in the inspection of the two cargoes of the Hurd a distinction was made between culls and rejected ties. The first cargo is shown by the inspection to have had 13,110 No. 1 cedar ties, 1,115 culls, and 830 rejected. The second cargo had 8,101 cedar ties, 2,823 culls, and 3,410 rejected. It would seem that everything below No. 1 was treated either as cull or rejected, and in the inspection of the ties shipped by the steamer Pine Lake no distinction was noted between cull and rejected. In the inspection of the Hurd there was a distinction noted, but just what was meant by the distinction is not clear. In neither inspection were there any No. 2's accounted for. We think this circumstance, in connection with the testimony of

the plaintiffs' witnesses, was sufficient to raise a fair question for the jury as to whether the inspection had been made in accordance with the contract.

Objection was made to certain questions put to the witnesses as to what these ties would show according to the Chicago inspection. These questions were put to the plaintiff Lehigh. The questions and answers were as follows:

" *Q.* Now, what would you say as to the inspection of this cedar that you had there, that you tallied on the vessel, that was gotten out by you and McClintock?

" *Mr. Hoffman:* I object to the question as incompetent in the way the question is put. (Objection overruled, and an exception duly taken.)

" *A.* The way I have always seen cedar inspected, etc., it would run about 22 or 23 per cent. to seconds.

" *Q.* Now would that be Chicago inspection at an honest count—an honest inspection in Chicago?

" *Mr. Hoffman:* I object to that as incompetent, for the reason that it is asking this witness for a count in Chicago that he has not testified he knows anything about that at all. (Objection overruled and an exception duly taken to such ruling.)

" *A.* Why, yes, those would be of good merchantable ties.

" *Q.* As I understand your testimony that you gave yesterday, is that you have had experience in Chicago inspections?

" *A.* Not directly, in Chicago. I have sent ties to Chicago market, and seen the report after it came back, and I know how them ties went.

" *Q.* As I understand you, you say that you would consider the inspection that you proposed for these ties would be the same in Chicago?

" *Mr. Hoffman:* That is objected to. It is not what he proposes."

We think this testimony was sufficient to show some knowledge on the part of this witness of the Chicago inspection. The precise objection that the witness had not shown himself competent to testify as to the Chicago inspection was not in fact made in counsel's objection. The point appears to have been that, as the witness was

not present when the count was made in Chicago, he could not impeach that count by showing that it omitted the large number of No. 2's wholly from the inspection.

It was also complained that the circuit judge in his charge left the jury to find the value of the ties under the quantum meruit, and it is said there is no evidence of value. The price fixed by the contract was some evidence of value.

We think no prejudicial error was committed, and the judgment will be affirmed.

GRANT, BLAIR, OSTRANDER, and HOOKER, JJ., concurred.