[L. A. No. 6427.　Department Two.—April 18, 1921.]

JEANETTE　KIRKHAM　WOOD et al., Respondents, **v.**
LINUS J. NIEMEYER et al., Appellants.

[1] Fraud — Exchange of Property — Action for Damages — Sufficiency of Evidence.—In this action for damages for fraudulent representations alleged to have been made by defendants to plaintiffs on an exchange of properties by them it is held that the evidence was sufficient to sustain findings as to the making of the false representations by the defendants, plaintiffs' reliance upon them, and the value of the respective properties exchanged.

[2] Id.—Measure of Damages.—It is a settled rule of law in this state applicable to actions for deceit in the sale or exchange of real estate that the plaintiff, as the party found to have been defrauded, is entitled to recover the difference between the actual value of the property which he received and the value which it would have had if the defendant's representations as to the value thereof had been true.

[3] Id.—Value of Property Exchanged—Admissibility of Memorandum.—A memorandum of the agreement of exchange of properties, containing a list of the properties conveyed by plaintiffs to defendant, and plaintiffs' estimate of the value thereof, is some evidence of the value of the property transferred in an action for damages for alleged false representations made by the defendant to the plaintiffs.

[4] Id.—Damages—Cost of Altering Building.—In an action for damages for alleged false representations in an exchange of property, where it was shown that plaintiffs were induced to accept a building on the representation of defendants that it was rented and producing income as a moving picture theater, which representation was proven to be false, the cost of altering the building to make it rentable was a proper element to take into consideration in fixing the damage resulting from the fraud.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

James S. Bennett and Harold E. Thomas for Appellants.

2.　Measure of damages for fraud in the exchange of real property, notes, 15 Ann. Cas. 475; 38 L. R. A. (N. S.) 465.

Lowenthal, Loeb & Walker and Loeb, Walker & Loeb for Respondents.

LENNON, J.—In the month of December, 1917, plaintiff I. A. Wood was the owner of a ranch consisting of sixty-three acres of land, part in vineyard, part in alfalfa, and the rest unimproved, and defendant Niemeyer owned a building in the city of Los Angeles which contained two small stores and an auditorium and lobby designed and constructed for use as a moving picture theater. Being desirous of disposing of their respective holdings, each had listed his property with a real estate broker in Los Angeles. By this broker the two parties were brought together and, after each had inspected the property of the other, an exchange was finally effected, whereby the said plaintiff transferred to defendant Niemeyer his ranch, together with certain horses, cattle, tools, and implements thereon, and received from said defendant the lot and building above mentioned and certain additional property which need not be described. The exchange was made by means of an escrow proceeding which was completed in January, 1918.

In the latter part of the year 1918, plaintiff I. A. Wood and his wife brought the present action against defendants Niemeyer and Dones for damages for fraud in the transaction above outlined. It appears from the allegations of the complaint that, during the negotiations for the exchange and for the purpose of inducing plaintiffs to consent to and consummate said exchange, defendant Niemeyer represented that the moving picture theater in the building owned by him was rented to a reliable tenant named Dones, who was in possession of the theater under a written assignment of a lease executed by defendant Niemeyer, as lessor, and one Fred Ford, as lessee, on May 31, 1917. The said defendant further stated that the theater was being conducted at a profit by said Dones and that the latter was paying a monthly rental of $175 under the lease, which would not expire until June 1, 1920. The complaint states that, upon plaintiffs communicating with defendant Dones, informing him of their contemplated purchase and inquiring as to the truth of these statements, defendant Dones stated to plaintiffs that the lease was in full force and effect and that he was conducting the theater at a profit and doing very well.

Plaintiffs believed the statements and representations of defendants, made the exchange in reliance thereon and were deceived thereby. On January 19, 1918, at the time of the completion of the escrow, defendant Niemeyer paid to plaintiffs the sum of $105, purporting to be a part of the rent of the theater for the month of January paid to defendant Niemeyer by defendant Dones. Thereafter defendant Dones never paid any rent for the theater and, on account of the nonpayment of rent, plaintiffs were compelled to cancel the lease on February 6, 1918. The complaint then sets forth that the lease and assignment were executed to Ford and Dones as agents of defendant Niemeyer and as part of a conspiracy for the purpose of enabling defendants to represent that the theater was being profitably conducted by a reliable tenant and that the statements and representations in respect thereto were made as a part of an agreement between the defendants for the purpose of inducing the purchase by plaintiffs. Plaintiffs allege that no revenue is obtainable from the auditorium as a moving picture theater, that it must be remodeled so as to render it suitable for other purposes, and that the property is not worth what it would have been had defendants' representations as to the lease and rental thereof been true. Plaintiffs seek damages for the alleged fraud.

Both defendants filed answers denying the allegations of the complaint, and defendant Niemeyer filed a cross-complaint claiming misrepresentations on the part of plaintiffs as to the value of the ranch and asking damages therefor. The trial court found that the facts in regard to the conspiracy in the ostensible execution and assignment of the lease and the representations made by defendants concerning the same were substantially as pleaded in the complaint. The allegations of the cross-complaint as to the misrepresentations on the part of plaintiffs and resulting damages to defendant Niemeyer were found to be untrue. Judgment was rendered in favor of plaintiffs for damages in the sum of $9,007. [1] Defendants appeal from the judgment upon the ground that the evidence is insufficient to sustain the findings of the trial court in the following particulars: (1) The making of false representations by defendants; (2) plaintiffs' reliance upon defendants' representations; (3) the value of the respective properties exchanged.

Plaintiff I. A. Wood testified that defendant Niemeyer told him that the theater was being conducted by defendant Dones at a profit, that Dones was occupying the same as assignee of a lease and was paying $175 a month therefor, that Dones was a reliable tenant and that the rent would be mailed to plaintiff the first of each month so that he would not even have to go to the building to collect the same. The purported lease was delivered to plaintiff and, when he inquired as to the whereabouts of Ford, the original lessee, he was informed by the defendants that Ford could not be located. Plaintiff further testified that he would not have consummated the deal had he not believed the statements of defendant concerning the existence of the lease and that the building was rented and bringing in good returns and was a "good revenue-paying affair." Up to this point plaintiff's testimony was corroborated by Mr. Kious, but the latter was not present at the interviews between plaintiff and Mr. Dones. Plaintiff testified that, before purchasing the property, he inspected it several times and had several conversations with defendant Dones. At the first conversation defendant Dones refused to talk about the property until he had received word from Mr. Niemeyer. He later told plaintiff he had communicated with Mr. Niemeyer and that the latter had stated that he was thinking of making an exchange with plaintiff and that plaintiff was free to question Dones concerning the property. Plaintiff then asked about the business and Dones said that he was running the theater under the lease, which was "absolutely all right," that business was increasing very much, that he expected in a short time to pay off the mortgage on the furniture in the theater, and that he "only regretted that there wasn't more seats in the building than it contained." The exchange was made in January, 1918, and plaintiff testified that Dones never paid any rent thereafter and, when plaintiff went to the theater for the rent, shortly after the first of February, 1918, Dones told him that he could not pay the rent, that the theater was not paying and he could not run it. The theater was then closed and plaintiff was unable to rent it and had received only $175 as rent therefor from the time he acquired the building until the date of the trial, which was over a year and a half.

CLXXXV Cal.—34

Defendant Dones, who was called as a witness by plaintiffs, subject to the provisions of section 2055 of the Code of Civil Procedure, testified that he had never seen Ford, the original lessee, that some time prior to the assignment of the lease to him he was called on the telephone by Ford, who said he heard Dones wanted to open the theater, and that Dones then asked Ford to come and talk over the matter. Ford never appeared, but, a few days after this conversation, defendant Niemeyer came to see Dones and stated that he would obtain an assignment of the lease from Ford to Dones. Dones also testified that, after the assignment and during the months of December, 1917, and January, 1918, he occupied the theater as *tenant,* but he admitted his signature to a letter, produced by plaintiffs' counsel, dated April 15, 1918, and addressed to a deputy collector of internal revenue of the United States government. In this letter it was stated that, during the months of December, 1917, and January, 1918, Dones was the manager of the theater in question, that during the time that he was manager Mr. L. J. Niemeyer was the owner of the theater as well as of the furniture and property, both real and personal, that he had nothing to do with the taxes and, in fact, did not know there was a government tax to be paid. The letter closed with the following statement: "I hope this letter will make it plain that I have never owned any theater whatsoever, and when I was running said theater, it was simply as manager for Mr. L. J. Niemeyer."

Another witness, called by plaintiffs, a real estate man, testified that, shortly prior to the transaction between plaintiffs and defendants now before the court, defendant Niemeyer had listed the theater property with him. This real estate dealer arranged an exchange of the property for property in Colorado. At the time of the exchange it was represented that the theater was leased to parties by the names of Warner and Sayler. Shortly after the consummation of the exchange the client from Colorado became dissatisfied and wished to rescind. At first defendant Niemeyer declined, but finally consented to a rescission upon being informed by the witness that the latter had discovered that the lease under which the theater was operated at the time of the exchange was not *bona fide,* the ostensible lessees having been paid by defendant Niemeyer to sign the lease.

This testimony was corroborated by that of a witness who had been employed at the theater as a janitor during the times in question.

It is unnecessary to go into further detail, for to do so would be but weighing the evidence, and it is clear from the evidence thus far excerpted that there is ample substantial evidence in support of the. findings to the effect that the lease and assignment were fictitious and arranged for the purpose of enabling defendant Niemeyer to secure a purchaser of the property and that they in fact accomplished the purpose which they were designed to bring about.

The court found that the representations that the lease would not expire until June 1, 1920, and that the lease called for a monthly rental of $175, were untrue. Defendants complain of this finding, claiming that the terms of the lease show that these representations were true. The court found, in substance, that the lease was not *bona fide*, but was executed as part of a conspiracy to permit the defendant Niemeyer to dispose of his property, and that the representations that there was a binding lease to a reliable tenant containing the terms mentioned was untrue. The evidence justifies this; if there was not a *bona fide* lease as represented, the terms of the purported lease were immaterial.

The remaining questions concern the findings of the value of the properties exchanged. The findings place the value of the ranch traded by plaintiffs at twenty-six thousand nine hundred dollars, less a mortgage of six thousand dollars, and the value of the personal property transferred with the ranch at two thousand five hundred dollars, making a total valuation, after deducting the amount of the mortgage, of twenty-three thousand four hundred dollars. The value of the theater property which passed to plaintiffs under the exchange was found to be $19,193, less an encumbrance of eight thousand dollars, and the additional property transferred was valued at three thousand two hundred dollars, making a total of $14,393. The damage awarded was the difference between the value of the property conveyed by plaintiffs and that received by them from defendants, of $9,007. Defendants assert that the evidence did not warrant the placing of a gross valuation of twenty-six thousand nine hundred dollars upon the ranch. This contention merits but little, if any, consideration, for respondents have demon-

strated in their brief that, from the evidence adduced, the trial court should have applied a different measure of damages and, consequently, have placed a higher valuation on the ranch than that found. That is to say, the trial court found, upon sufficient and satisfactory evidence, that the defendant Niemeyer represented the value of the theater property to be thirty-five thousand dollars, and the aggregate value of certain other real and personal property which was also involved in the trade, to be three thousand two hundred dollars, making the represented aggregate value of the defendant's property to be of thirty-eight thousand two hundred dollars. The trial court further found the actual value of the defendant's property involved in the exchange to be but $19,193. [2] Upon these findings and the settled rule of law in this state applicable to actions "for deceit in the sale or exchange of real estate . . . " the plaintiff, as the party found to have been defrauded, was entitled to recover the difference between the actual value of the property which he received and the value which it would have had if the defendant Niemeyer's representations as to the value thereof had been true. (*Hines* v. *Brodie,* 168 Cal. 507, [143 Pac. 729]; *Blake* v. *Arp,* 180 Cal. 144, [179 Pac. 683]; *George Cople Co.* v. *Hindes,* 34 Cal. App. 576, [170 Pac. 155].) So we say, in unison with counsel for respondent, that appellant has but little cause for complaint as to the amount of damages awarded him when, as a matter of law upon the facts as found, the trial court should have awarded the plaintiff as damages the sum of $19,007, the difference between the misrepresented and the actual value of the defendant's property, rather than the sum of $9,007, which the court did award for damages, upon the mistaken theory that the measure of damages was the difference between the actual market value of the exchanged properties. [3] Defendants contend that there was no evidence to support the finding that the value of the personal property transferred to defendant Niemeyer by plaintiffs was two thousand five hundred dollars. It does not appear that the values of either the personal property sold with the ranch or the property which passed to plaintiffs with the theater property were in dispute. However that may be, plaintiffs introduced in evidence a written memorandum which plaintiff I. A. Wood had delivered to defendant Niemeyer at the time of the com-

pletion of their negotiations. This writing, which, it was testified, was a memorandum of the agreement of the parties to the exchange, contained a list of the property conveyed by plaintiffs to defendant Niemeyer and plaintiff's estimate of the value thereof, including an itemized statement of the personal property in question at a total valuation of two thousand five hundred dollars. Defendants claim that this valuation cannot be considered in determining the value of the personal property, for the reason that in this memorandum the ranch was valued at thirty-one thousand five hundred dollars, whereas the court found the ranch to be worth only twenty-six thousand nine hundred dollars. Considerable evidence was introduced on both sides as to the value of the real estate, and while the court evidently accepted other evidence as to the value of the ranch, it does not follow that the court disregarded the valuation placed upon the personal property by the plaintiff. Since the memorandum in question was a memorandum of the agreement of the parties concerning the property to be conveyed, the statements therein contained were some evidence of the value of the personal property transferred. (*Booth* v. *Pendola*, 88 Cal. 36, [23 Pac. 200, 25 Pac. 1101]; *Bringham* v. *Knox*, 127 Cal. 40, [59 Pac. 198]; *Lehigh* v. *Standard Tie Co.*, 149 Mich. 102, [112 N. W. 481].) No evidence was introduced by defendants to contradict or offset these statements.

[4] · The final contention of defendants relates to the fact that in valuing the building traded by defendant Niemeyer to plaintiffs the court deducted from the cost of reproduction thereof the cost of altering the building to make it suitable for a use other than as a moving picture theater. There was testimony that no rent could be obtained from the building in the condition in which it stood, because no one would rent the auditorium as a moving picture theater, and that was the only purpose for which it could be used in its then condition. Plaintiffs were induced to accept the building in that condition by the representations of defendants that the building was rented and was producing income as a moving picture theater. Therefore, the fact that the building would not yield an income as it then stood and the necessity for altering the same to make it rentable was, under the theory adopted by the trial court, an element to be taken

into consideration in fixing the damage resulting from the fraud.

The judgment is affirmed.

Wilbur, J., and Sloane, J., concurred.