CRYSTAL PIER AMUSEMENT COMPANY (a Corporation) et al., Respondents, v. ARNOLD M. CANNAN, as Administrator, etc., et al., Appellants; EARL TAYLOR et al., Cross-Defendants.

J. A. Kennedy, Stanley W. Guthrie and Victor Ford Collins for Appellants.

Sloss & Turner, as *Amici Curiae* on Behalf of Appellants.

Cooper & Collings, Amos Friedman and Lewis D. Collings for Respondents.

LANGDON, J.—This is an action to recover damages for false representations. In March, 1926, plaintiff Crystal Pier Amusement Company (hereinafter called Amusement Company) decided to erect an amusement pier at Pacific Beach, San Diego County. Earl Taylor, president of the company, entered into negotiations with defendants, who formed a partnership under the name of California Creosoting & Timber Company. The defendants made representations to Taylor as to the material necessary for the pier, and agreed on April 3, 1926, to furnish creosoted piling of a certain quality, and also to drive, cap and brace the same, representing themselves to be experts in pier construction. The

material was furnished and the pier was constructed by July 5, 1926. During the period of construction, Neil Nettleship was president of the Amusement Company,' and after April 22, 1926, .B. W. Tye was secretary and treasurer, both likewise being directors. While the construction was in progress, and thereafter, up to August, 1926, similar representations were made by defendants to those parties.

In March, 1927, Nettleship, Tye and others incorporated plaintiff Crystal Pier Holding Company (hereinafter called Holding Company), and became officers and directors of this company while retaining their positions with the Amusement Company. The Amusement Company transferred title to the pier to the Holding Company, which · proceeded to carry out the original project of building structures, including a ballroom, on the pier. Of the $165,000 of issued stock of the Holding Company, the Amusement Company owned $146,000.

In August, 1927, plaintiffs discovered that the piling, caps and braces were not creosoted, but were treated with another and inferior substance. Other representations of defendants were found to be untrue, and the pier was closed as unsafe. This action was then brought, and after an extended trial, the lower court made findings in favor of plaintiffs on all material issues. Judgment was given canceling the construction contracts and awarding damages in the sum of $91,961.63. Defendants bring this appeal.

The record amply sustains the findings of the court on the essential issue of fraudulent representations, and the attack thereon is without substance. The only points which require consideration are, first, that plaintiff Holding Company has no cause of action, and second,. that the court applied an erroneous theory of damages.

The first contention is based upon the following facts: The Amusement Company built the pier. Thereafter the Holding Company was organized and it built the ballroom. The representations upon which recovery is sought were made to officers of the Amusement Company, before the Holding Company was organized. Hence, defendants argue, the Holding Company has no cause of action because no representations were made to it, or relied upon by it, in connection with the building of the ballroom. They conclude that since the Amusement Company did not build the

ballroom, and the Holding Company was not defrauded, there can be no recovery by either party for the loss incurred as a result of the construction of the ballroom, the damages recoverable being limited at most to those suffered in building the pier.

It would indeed be remarkable if the law proved so barren that legal principle could not be found to avoid such a result. It is, of course, obvious that the whole matter would have been settled by an express assignment of the cause of action for fraud by the Amusement Company to the Holding Company, at the time of the transfer of title to the pier. (Swallow v. Tungsten Products Co., 205 Cal. 207 [270 Pac. 366].) At the time of the transfer, however, the defects in the material, and hence the existence of the cause of action, were not disclosed. At the present time, the statute of limitations would undoubtedly bar any new action, and it would be useless to attempt an assignment now. The question is, therefore, whether either of the plaintiffs may maintain the action under the existing circumstances.

Plaintiffs suggest, among other theories, that the Holding Company was incorporated for convenience by the same persons who organized the Amusement Company, to carry out the projects planned by the Amusement Company; that the stock ownership and control of the two corporations is practically identical, and that the separate corporate entities may be disregarded for the purpose of this action. This is an unusual situation for the application of this doctrine, since the corporations themselves seek to deny their separate existence. We do not think it necessary or desirable to consider the application of the doctrine, for the facts support the judgment on much simpler grounds.

The defendants have argued that as the representations were made before the Holding Company was created, they were made not to it, but solely to the Amusement Company. We should not be led astray by such figurative expressions, for in truth no representations were made to any "corporation" as such. They were made in this case, as always, to individuals: to Taylor, Nettleship and Tye. They were made to the corporation by virtue of the fact that these individuals were agents of the corporation. Nettleship and Tye relied upon the representations when they acted on behalf of the Amusement Company in erecting the pier.

They relied upon them when they acted on behalf of the Holding Company in building the ballroom. At all times the representations were in the minds of the executive officers of both corporations. The misstatements would not have more fully accomplished their fraudulent purpose if they had been repeated to Tye and Nettleship on the day the Holding Company was created, and on every day thereafter that the work continued.

With the situation thus reduced to simple terms, there is authority to support the trial court's conclusion. ■ In order for representations to be actionable, it is not necessary in all cases that they be directly made to the parties seeking recovery. "A representation made to one person with the intention that it shall reach the ears of another, and be acted upon by him, and which does reach him, and is acted upon by him to his injury, gives the person so acting upon it the same right to relief or redress as if it had been made to him directly." (*Henry* v. *Dennis,* 95 Me. 24 [49 Atl. 58, 60, 85 Am. St. Rep. 365].) In the instant case we may say that the representations were reasonably intended to be relied upon by such persons as were concerned with the construction of the pier *and its improvements,* for without the ballroom and other such structures, the pier would be useless; and when, as appears here, those persons (the two corporations), actually did through their officers receive and rely upon the representations, there can be no valid objection to recovery by each.

In *Henry* v. *Dennis, supra,* the plaintiff Henry had been engaged in business under the name of W. S. Henry, Jr., & Co., and thereafter formed a partnership with another party, under the name of Henry & Parsons. Both firms engaged in the same business, and both continued to operate. Henry wrote a letter in the name of the individual business, making inquiries as to the financial condition of Gardiner Woolen Company, and defendant replied, making the misrepresentations for which the action was brought. These misstatements were acted upon both by the individual business and the partnership. The defendant had no knowledge of the existence of the partnership. In holding him liable to both firms, the court said (49 Atl. 60): " . . . he must have contemplated that the contents of this letter would either be communicated to other members of any

firm of which Henry was a partner, in that business, and be acted upon by the firm, or that Henry, acting for a firm, would be induced by his letter to give credit to the woolen company. The letter was not only intended for Henry, but as well for those associated with him in that business.

"It is of no consequence that the letter was directed to W. S. Henry & Co., when it was in fact relied upon by Henry as a member of the firm of Henry & Parsons. It is not necessary, in order for a defendant to be liable for the consequences of his misrepresentations, that he should know the names of the person to whom the misrepresentations may be communicated, provided he contemplated that they should be communicated to others and be acted upon by them."

In *Iowa Economic Heater Co.* v. *American Economic Heater Co.,* 32 Fed. 735, defendants made misrepresentations to certain individuals with respect to the merits of a heating device manufactured by defendants, and these individuals, in reliance thereon, organized plaintiff corporation, which paid $15,000 for the right to sell the heater in the state of Iowa. It was held that the corporation could recover damages for the fraud. With respect to the objection that the plaintiff had no corporate existence at the time the representations were made, the court said (32 Fed. 736):

"A corporation cannot be said to know anything except through its members or agents, and representations made to individuals, by reason of which such individuals are induced to form a corporation, may be said to be made to the corporation. The statements made were the moving cause of the organization of the corporation, and it was formed to act upon the information given to those who promoted its organization; and if this information was false and fraudulent, and the corporation was damaged thereby, it may have its action for such resulting damage."

In *Schofield Gear & Pulley Co.* v. *Schofield,* 71 Conn. 1 [40 Pac. 1046], the facts were similar to those of the preceding case, that is to say, misrepresentations concerning a mechanical appliance were made to individuals who afterwards formed plaintiff corporation to purchase defendants' patents and plant, and carry on the business. The court said (71 Conn. 14):

"The plaintiff sues for an injury to its corporate interests. This could clearly be a result of false representations

made to its managing agents. Could it also be due, and due alone, to false representations made to its promoters, in order to induce them to proceed to its organization, with a view of its making a contract with the party from whom the declarations came? The superior court was right in giving an affirmative answer to this question. . . .

"A corporation comes into existence, as an artificial person, at a particular moment of time; but its rights and liabilities are largely dependent upon prior events. It springs out of a previous contract between its shareholders, which determines its objects and purposes. It takes advantage of subscriptions which they have made to its capital stock, in contemplation of its formation. It may also take advantage of offers which they have received from third parties to enter into contracts with it after it comes into being. Such offers, while made to individuals who have no authority to speak for any but themselves, are made to be communicated by them to the corporation, when it is capable of acting, and, of course, to be communicated with such statements of the attending circumstances as may be necessary to put it in possession of all facts material to aid it in deciding whether or not to close with the proposal."

"If, therefore, the defendant fraudulently told the five individuals named in the complaint what is there alleged, in order to induce them to form the plaintiff corporation and procure the execution by it of the contract which was the subject of their negotiation with him; and if thereupon, in reliance on his statements, they did the very things which his representations were designed to promote or secure; the fact that the last step—the execution of the contract—was, in form, the act of a party with which he never had any direct communication, cannot relieve him from responsibility for all the damage naturally resulting from his fraud. . . . It would have been an idle ceremony for these five men, after becoming the sole shareholders and directors of the plaintiff, to recount to themselves, as such, the representations made to them as individuals, a few weeks before, in contemplation of their occupying this very position. Whatever had been thus said to them to influence the action of the projected corporation, was in legal effect known to the corporation, as soon as it was formed."

We are satisfied that these authorities fully support the theory upon which recovery by the Holding Company has been justified in the earlier part of this opinion. If, therefore, both the Holding Company and the Amusement Company are parties to which the misrepresentations may be considered to have been made and relied upon, the apportionment of the damages between them is a matter with which defendants can have no concern; and where, as here, the court has given a judgment in favor of both plaintiffs jointly, defendants are not prejudiced and cannot complain.

With respect to the right of the Amusement Company to maintain the action, we think the same observations apply. It is conceivable, although we express no opinion on the point, that had the Amusement Company sued alone for damages suffered in constructing the pier, defendants would have had a valid objection to recovery on the ground that it had transferred the property and hence had either transferred its right of action, or by being paid full value had been made whole as to any damages suffered. The theory of defendants' objection would thus have been that they might be compelled to account again for the damages to the transferee. However, it might have been shown that by reason of warranties or other contractual stipulations, the Amusement Company would be liable to the Holding Company for any defects in the pier, which liability would undoubtedly be a proper showing of damage. In such case, while the Amusement Company could maintain the action, the court would normally compel the joinder of the Holding Company as a party necessary to "a complete determination of the controversy". (Cal. Code Civ. Proc., sec. 389.) Upon such joinder, defendants' objection would be met, for a judgment would be rendered which would protect them from any further liability for their fraud. (See *Wiseman* v. *Sklar*, 104 Cal. App. 369 [285 Pac. 1081].) So here, where all parties concerned are before the court, the defendants are fully protected. Whether the Holding Company is entitled to all the damages or whether the Amusement Company shall retain that part resulting from the defective pier, are questions which depend upon the contractual and other relations between these two companies, and do not affect defendants' rights in any respect.

The contention of defendants that the trial court applied an erroneous theory of damages may be disposed of briefly. A great deal of testimony was taken, and the estimates of cost, salvage, usefulness of present equipment, etc., varied greatly. There was sufficient evidence to warrant a much greater sum as damages than that actually awarded by the court. Under these circumstances, our duty is to uphold the findings if it is possible to do so upon any sound theory. The principal finding is "that the said pier is now unsafe for use as an amusement pier or *any other purpose,* and three-fourths of said pier will have to be torn out and replaced, and said ballroom and structures thereon will have to be torn down and replaced, to plaintiffs' and cross-defendants' damage in the sum of sixty-five thousand dollars, the *cost* of said ballroom, and the further sum of thirty thousand, seven hundred fifty ($30,750.00) dollars, the cost of three-fourths of the length of said pier, less the sum of three thousand, seven hundred eighty-eight and 37/100 ($3,788.37) dollars, the amount unpaid by plaintiffs and cross-defendants to defendants . . . " Defendants assert that the court has adopted as its theory of damages the *original cost* of building the structures, instead of their *replacement cost.* It may be conceded that replacement cost is the proper measure of damages in a case of this sort, but it is by no means clear that the court disregarded it. The term "cost" does not mean "original cost" any more than it means "replacement cost", when the evidence which led to the finding is considered. Evidence was introduced by plaintiffs' witnesses to show that the actual cost of constructing the pier was $41,000, and the cost of constructing the ballroom was $93,000. Allowing for one-fourth of the pier which was above high-water mark and could be left standing, the sum of $91,961.63 awarded by the court was still considerably below the actual cost as testified by these witnesses. In support of the court's findings, we may therefore conclude that it did not use the original cost as its measure of damages, but merely as evidence of possible replacement cost, which was perfectly proper. (See *Divani* v. *Donovan,* 214 Cal. 447 [6 Pac. (2d) 247].) It might be added that if the extreme rule of damages for fraud (the difference between the actual value of the property and its value had it been as represented) had been applied (see

*Hines* v. *Brode,* 168 Cal. 507 [143 Pac. 729]), the evidence would have warranted still greater recovery. As to the complaint that salvage value was not taken into consideration, there was evidence to show that the cost of wrecking the structures would exceed the resale value of any materials recovered. On the whole, we think that while the court's findings might have been more explicit on this issue, defendants have failed to establish reversible error in its final award.

The judgment is affirmed.

Preston, J., Thompson, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.

[Sac. No. 4774. In Bank.—October 3, 1933.]