**Elmer F. SHEPARD and Kathryn M. Shepard, his wife, Appellants,**

v.

**CAL-NINE FARMS, a corporation, Appellee.**

**No. 15599.**

United States Court of Appeals Ninth Circuit.

Jan. 31, 1958.

Rehearing Denied March 10, 1958.

Kramer, Roche & Perry, F. Haze Burch, Phoenix, Ariz., for appellants.

Cunningham, Carson & Messenger, William H. Rehnquist, Phoenix, Ariz., for appellee.

Before HEALY, POPE and LEMMON, Circuit Judges.

HEALY, Circuit Judge.

This appeal is from a judgment awarding damages for false representations found to have been made by appellant Elmer Shepard, which induced the purchase by appellee corporation of a farm or ranch in Arizona belonging to Shepard.

One Otto, a resident of California, became interested in the farm, which he learned was for sale at a price of $80,000. Not having himself sufficient money to finance the acquisition, Otto returned to California where, with the help of one Haas, his brother-in-law, he interested seven other persons in the Fresno area in the venture. These individuals agreed to put up part of the money for the purchase if the ranch, after further investigation by Otto and Haas, met with their approval. The group consulted a lawyer, and were advised that the best way to handle such a transaction was to incorporate. Otto, accompanied by Haas, returned to Arizona with $2,000 "earnest money" contributed pro rata by the nine interested parties. They met with Shepard at the farm, and during the course of discussions with him the representations alleged in the complaint in this case were made concerning the history, quality, and output of a well on the farm which provided water essential to irrigate cotton—the crop in which the proposed purchasers were interested. An option agreement was thereafter executed between Shepard on the one hand and Otto and Haas on the other, secured by the payment of the $2,000. Shepard was told that a corporation, still to be formed, would take up this option, and to this he expressed no objection.

Some three months following this transaction appellee Cal-Nine Farms was incorporated. A few days later escrow instructions were issued to a Phoenix bank embodying the option agreement, naming Shepard and his wife as sellers and appellee as purchaser. The sum of $18,000 was paid upon the execution of the escrow instructions and arrangements made for the payment of the balance of $60,000 over a term of years.

Otto, as president of Cal-Nine, went into possession of the ranch three months later, that is, in March of 1955.

During that year it was discovered that the well was greatly inferior in output as compared with the representations appellants had made for it. Because of the shortage of water the cotton crop of the year suffered heavy damage, and in the following year an adequate well was sunk.

Cal-Nine Farms brought this suit for damages for false representation in May of 1956. On the first day of the trial Otto and Haas assigned to Cal-Nine all interest they might have in any such cause of action. The case was tried to the court (Judge Ling) sitting without a jury, and damages were awarded in the amount of $35,106, approximately two-thirds of which was for expense of drilling an adequate well, and the balance for crop damage suffered in 1955. Findings of fact were made supporting all elements of the cause of action for fraud.

Appellant's primary contention is that Cal-Nine Farms is not a proper party plaintiff in this action since no fraudulent representations were or could be made to it, but rather were made to individuals before the plaintiff corporation was formed. They claim that such is the law of Arizona.

The Arizona Supreme Court appears not to have passed directly on the point. However, in Deatsch v. Fairfield, 27 Ariz. 387, 233 P. 887, 891, 38 A.L.R. 651, the court stated that "the test of assignability of a chose in action is whether it will survive and pass to the personal representative. If it will survive it can be assigned." The rule was reaffirmed in Employers Casualty Co. v. Moore, 60 Ariz. 544, 142 P.2d 414. Applying the rule of assignability stated in these cases it would appear that here the chose in action for fraud was assignable in 1956 when Otto and Haas assigned all interest they had to Cal-Nine. The Arizona legislature, in 1955, had by statute said that, with certain exceptions not here relevant, every cause of action

"shall survive the death of the person entitled thereto." A.R.S. § 14–477.

Appellee cites the closely analogous California case of Crystal Pier Amusement Co. v. Cannan, 219 Cal. 184, 25 P.2d 839, 840, 91 A.L.R. 1357, which held that a corporation could recover damages for fraud perpetrated upon its incorporators prior to the existence of the corporation. It was contended by the defendants in the case that the second of the two corporations there involved had no cause of action because the representations in question were not made to it, and that the other corporation had no cause of action either. In rejecting the contention the court said that "it would indeed be remarkable if the law proved so barren that legal principle could not be found to avoid such a result." The court went on to say that even without an assignment the second corporation could maintain the action for fraud.

 The testimony in respect of other phases of the case is in conflict, but the findings of the trial court have ample warrant in the record. It is claimed that appellee has not sustained the burden of proof necessary in a case of fraud. We do not agree. Nor do we see merit in appellants' argument that the proper measure of damages was not applied. The parties are in agreement that in fraud actions Arizona applies the so-called "benefit of the bargain" rule, that is, the difference in value of the thing as represented and as it actually is. There was evidence sufficient to support both the need for and the cost of the new well, and also evidence adequate to support the award for damage to the 1955 crop because of inadequate water supply.

Seeing no reason for doing otherwise, we affirm the judgment.

POPE, Circuit Judge.

I concur. The only problem that appears difficult to me is whether the trial court in assessing the damages was in error in not applying literally the standard set forth in Lutfy v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161, 165.[1] Instead of taking testimony as to the value of the ranch as it actually was, and the value it would have had had the representations been true, the trial court took a short cut by fixing this part of the damages as the cost of a new well.

It seems to me that the trial court was warranted in concluding that this would be the very minimum difference between the value of an irrigated ranch which the purchasers thought they were buying, and a dry ranch, or one nearly so, which the place turned out to be. I do not think that appellants have demonstrated any prejudice resulting to them from the court's method of calculation; that method finds support in Nunn v. Howard, 216 Ky. 685, 288 S.W. 678, and in McCormick on Damages, 1935 Ed., § 122.

Furthermore there is respectable authority which the Arizona courts would probably recognize that a person defrauded may recover as one of the proximate results of misrepresentation expenses to which he has been put.[2] A case holding proper the recovery of the expenses of repairing a building to make it rentable where the purchaser had bought the building falsely represented to be rentable but found not to be so, is Wood v. Niemeyer, 185 Cal. 526, 197 P. 795, 799.

1. "The measure of the damages sustained by the purchaser where a purchase has been induced by fraud, is according to the weight of authority, the difference between the real value of the property purchased and the value which it would have had had the representations been true."

2. After discussing at length the various views as to the "benefit of the bargain" and the "out of pocket" rules, which he calls the "normal" measure of damages, Prosser states ("Law of Torts", 2nd Ed., p. 570) : "In addition to such a normal measure of damages under whatever rule the court may adopt, the plaintiff may recover for consequential damages, such as personal injuries, damage to other property, or expenses to which he has been put, provided that they are regarded as 'proximate' results of the misrepresentation."

It seems to me that the recovery of expenditures for the new well is within the principles of the Restatement of the Law of Torts, Vol. IV, § 919, as follows:

"(1) A person whose legally protected interests have been endangered by the tortious conduct of another is entitled to recover for expenditures reasonably made or harm suffered in a reasonable effort to avert the harm threatened.

"(2) A person who has already suffered injury by the tort of another is entitled to recover for expenditures reasonably made or harm suffered in a reasonable effort to avert further harm."

As for the loss of crop, it seems to me that this was plainly a proximate result of misrepresentations and that the award on account thereof was proper.