[Civ. No. 23228.   Second Dist., Div. Two.   Dec. 19, 1958.]

KNUTE E. GRANBERG et al., Respondents, v. DOROTHY TURNHAM, Appellant.

Raymond R. Roberts for Appellant.

Eugene S. Valian and William Camil for Respondents.

ASHBURN, J.—Defendant Turnham appeals from a judgment rendered against her for $3,092.67, based upon her negligence, as a real estate broker, in effecting a sale of real property from plaintiffs to Vernon L. Beck and wife through misrepresentation as to zoning, resulting in a rescission of the deal by Beck and a repurchase of the property by plaintiffs Granberg. The case was tried before a jury whose verdict for said $3,092.67 represents expenses actually incurred by plaintiffs—such as real estate commission, escrow fees, etc.—in consummating the original sale and the repurchase.

The evidence is conflicting. The proof favorable to plaintiffs' contentions is to the following effect. They owned property known as 6820 Balboa Boulevard, in the city of Van Nuys, upon which they conducted a retail nursery and landscaping business. The frontage is 100 feet and lies in two zones defined by the city zoning ordinance; the south 45 feet in zone C-2 which permits of use for a nursery and the north 55 feet in R-1 or single family residential zone, which excludes such nursery use. The line between the two zones ran through the residence situated on the property, and the southern portion was used for conduct of the business while the northerly part had storage of nursery stock upon it and display of a fertilizer sign, neither of which was permissible in an R-1 zone.

Mrs. Turnham was a real estate broker under whom David Graham and James Rogers worked as salesmen; they had authority to sign her name to listing agreements. On or about October 9, 1955, Mr. Graham called upon plaintiffs with a view to listing the property. Mr. Granberg told him of the existence of both R-1 and C-2 zoning upon the premises. A listing

agreement was made on October 16th, which employed Mrs. Turnham as realtor to sell the property, and same was signed on her behalf by Graham. At that time Mr. Granberg again told him the facts about the zoning and showed him where the line ran through the dining room in which they were sitting. Mrs. Granberg was not present on that occasion, but at some time before the sale was made (escrow was opened November 26, 1954) she talked with Graham about the zoning. She testified: "Q. Now, what did he say to you and what did you say to him about the property? A. Well, I explained the zoning in the property when it wasn't on C2 and he says this was the words Mr. Graham said. 'We won't mention that. The property will sell beter if we don't mention it.' Q. And what did you say then? A. I said, 'Mr. Graham, you cannot do that. You cannot do that.' Q. What did he say to you? A. 'All right.' And then he left. He left. He was laughing at the same time he said it."

The listing agreement had a form on the back designed for entry of details concerning the property, including the zone. When originally executed this back of the paper was not filled in at all. Graham took the listing to the office and testified he did not fill in that portion. Mrs. Turnham says she did it. In the appropriate place the zone was stated as C-2 without any reference to R-1. An original or copy then went from appellant to the San Fernando Valley Real Estate Board which prepared from it a "multiple listing" and distributed same to all members of the board. It stated the zoning to be C-2.

Mr. Vernon Beck and his wife were looking for C-2 property in the San Fernando Valley for use as a baton school. They contacted the office of broker James A. Milner, with whom Donald Engle, another broker, was associated. They had the multiple listing showing this property zoned as C-2. Beck told Engle he was interested in C-2 property in the valley, was shown such properties for a week or 10 days, and then was taken to see plaintiffs' place. The Becks saw and had possession of the multiple listing upon it, and Engle impliedly represented to them that it was C-2 property. Mr. Beck testified: "We had looked at nothing but C2 property throughout the Valley and like I say we wanted a home on this C2 property and, of course, it was taken for granted; that's all we looked for and I think that's all we were shown." Neither Beck nor Engle had any conversation with either plaintiff upon the subject. Herman P. Beck, an uncle of the

buyer, was with him when he told Engle that he was looking for C-2 property. He said that no one stated in his presence, either on that or on later occasions when he accompanied his nephew, that the plaintiffs' property was C-2, and "I think we went by the listing entirely."

Milner and Engle were acting as subagents of Mrs. Turnham in this deal. When the escrow was closed she received a commission of $1,600, which she divided with Milner, Engle, Graham, Rogers and the Real Estate Board. After the purchase the Becks went to the eastern part of the country and plaintiffs remained in possession by agreement. Late in June the Becks learned that the property was not entirely within the C-2 zone, told Mr. Granberg about it and demanded that he repurchase the property. After some consideration he agreed to do this and repaid the Becks their down payment of $12,000, plus certain interest upon mortgages which they had paid. Then plaintiffs confronted Mrs. Turnham with the situation. Mr. Granberg asked her why the property was not listed right and she replied, "well, I assumed that it was C2." She also said she would not pay back the commission but would sell the property again for plaintiffs without cost. Mr. Graham was present at the time; he kept walking back and forth and said: "It was all Dorothy's fault," referring to Mrs. Turnham. Then followed the lawsuit.

Graham testified that neither of the Granbergs told him about zoning or about the property being in two zones; that he did not fill in the reverse side of the listing agreement and did not tell the plaintiffs that it was all Mrs. Turnham's fault. Appellant testified that she placed the zoning information on the back of the listing agreement; that she did so at plaintiffs' home after asking Mrs. Granberg if "[t]his is a commercial zone" and receiving an affirmative reply. Appellant also denied that she said she had assumed the property was all in a C-2 zone, but admitted that she expressed a willingness to resell for plaintiffs without charge. She also said she did not recall any remark by Graham about its being all her fault.

In this setting the jury found for plaintiffs and the trial judge denied a new trial. Originally, Graham, Rogers, Milner, Engle and San Fernando Valley Real Estate Board were co-defendants with Mrs. Turnham. The complaint was in two counts; the first sounded in negligence and the second in fraud. Nonsuit was granted as to the fraud count. Defendants Graham and Rogers were granted nonsuits. The jury found

for Milner and Engle. Thus Mrs. Turnham became sole judgment debtor and appellant.

Her counsel argues that plaintiffs were using the property illegally and therefore they are precluded from recovering for Mrs. Turnham's negligence. It is said that they are estopped to deny that the entire property was in the C-2 zone; we infer that counsel means that they are estopped to deny that they represented it to be in that zone. The appearance of the premises seems to be the basis of the argument, which overlooks the principle that reliance upon the fact which is claimed to work an estoppel is of the essence of the plea. (*Gajanich* v. *Gregory*, 116 Cal.App. 622, 634 [3 P.2d 389] ; *American Nat. Bank* v. *A. G. Sommerville*, 191 Cal. 364, 372 [216 P. 376] ; *Lusitanian-American Dev. Co.* v. *Seaboard Dairy Credit Corp.*, 1 Cal.2d 121, 128 [34 P.2d 139].) Here there is no basis for an estoppel in the evidence which the jury credited, for Mrs. Turnham was told through her agent Graham that the property was partially in each of zones C-2 and R-1. The fact that he may or may not have reported this information to his principal is immaterial, for he was acting in the course of his employment and the principal was charged with knowledge of information acquired by him in the transaction of her business. (2 Cal.Jur.2d, § 160, p. 855; Civ. Code, § 2332; Bus. & Prof. Code, § 10177 h.) "An agent's knowledge of the content of a contract is imputed to his principal. [Citations.] This rule of law is not a rebuttable presumption. It is not a presumption at all. It is a rule which charges the principal with the knowledge possessed by his agent. [Citations.]" (*Columbia Pictures Corp.* v. *DeToth*, 87 Cal.App.2d 620, 630 [197 P.2d 580].)

Appellant claims there was error in the denial of a motion for leave to amend the answer to allege contributory negligence. This motion was made after all parties had rested. It was presented and denied on November 29, 1957; the answer had been filed on May 23, 1956. The contributory negligence claimed by counsel is violation of the zoning ordinance. It is said: "This defense was unknown to the defendant who finally remained in the case until the plaintiff's testimony was finished." But the answer alleges that plaintiffs, "at the time the property was listed and up to the time of sale used all of the property in violation of existing zoning regulations of the City of Los Angeles, that the use plaintiffs were at that time making of the property was as C-2 property." So there was nothing new in the defense. All the evi-

dence was in at the time the motion was made and if there was any contributory negligence shown thereby the court properly could have instructed with respect thereto, although there was no specific plea of contributory negligence. (35 Cal. Jur.2d, §§ 239 and 240, p. 776.) There are no instructions in either transcript.

This matter of allowing amendments at the close of the trial rests in the sound discretion of the trial judge, whose action will not be disturbed in the absence of an abuse of that discretion. (39 Cal.Jur.2d, § 244, p. 357; *Vogel* v. *Thrifty Drug Co.*, 43 Cal.2d 184, 188 [272 P.2d 1]; *Rogers Bros. Co.* v. *Beck*, 43 Cal.App. 110, 112 [184 P. 515]; *Palmer* v. *Wahler*, 133 Cal.App.2d 705, 708 [285 P.2d 8].)

There could have been no such abuse of discretion here, for the violation of the zoning ordinance could not constitute contributory negligence. That law is directed toward orderly development of properties within the city, not the protection of real estate agents who undertake to sell a given parcel; hence the violation thereof could not spell negligence as to the broker, who was not within the class for whose protection the law was passed. (See *Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 497 [225 P.2d 497]; *Corbett* v. *Spanos*, 37 Cal. App. 200, 204 [173 P. 769]; *Hagen* v. *Laursen*, 121 Cal.App.2d 379, 386 [263 P.2d 489]; *Boie-Hansen* v. *Sisters of Charity*, 152 Cal.App.2d 845, 848 [314 P.2d 189].)

It is asserted that the court awarded excessive damages in that the items included were special damages which had not been particularly alleged. The award includes plaintiffs' expenses of both escrows. In the first instance they aggregated $2,065.62, consisting of real estate commission of $1,600, interest on existing loan, $139.03, prepayment penalty, $90.77, service charge, $7.50, termite report, $10, title policy, $131.75, etc. The second escrow amount was $1,027.05, which included an allowance to the Becks of $729.90 to cover their expenses of the first escrow, certain insurance and recording fees, interest upon a loan procured by them, etc. The complaint specifically alleges the commission item of $1,600; it also says that upon the Becks' rescinding plaintiffs were compelled "to repay to the said BECKS all monies which plaintiffs had received from the BECKS, plus all expenses incurred by the BECKS in connection with their purchase of the property. . . . That plaintiffs have been further damaged by the amount of all expenses incurred by them in connection with the sale of the property to the BECKS and the reconveyance of the property from the BECKS

to plaintiffs, plus the loss to the plaintiffs of the profit and interest to be earned by plaintiffs on the sale of such property to the BECKS." When evidence was first offered upon this subject and after the question had been answered, counsel for Graham and Rogers said: "Objected to—irrelevant, incompetent and immaterial," and "Object." Such objections were not sufficient, for the matter was clearly admissible. The only good objection would have been that the items were not particularized. As to the inadequacy of such objections, see *Estate of Pierce*, 32 Cal.2d 265, 273 [196 P.2d 1]; *Crocker* v. *Carpenter*, 98 Cal. 418, 421 [33 P. 271]; 3 Cal.Jur.2d § 157, p. 636. When the escrow officer later testified to the expenses of the two escrows, no objection whatever was made. Thus appellant stands in the position of one who has not objected at all to the evidence in question.

While the general rule is that special damages must be alleged with particularity (14 Cal.Jur.2d, § 22, p. 651), it is also true of that, as of any other issue, that a trial of the issue without specific objection that it is outside the pleadings, precludes the parties from raising the point upon appeal for the first time. (15 Am.Jur., § 306, p. 750; 3 Cal.Jur.2d, § 140, p. 604; § 142, p. 607; 3 Witkin on California Procedure, § 97, p. 2265; *Cockerell* v. *Title Ins. & Trust Co.*, 42 Cal.2d 284, 288 [267 P.2d 16]; *Miller* v. *Peters*, 37 Cal.2d 89, 93 [230 P.2d 803]; *Buckley* v. *Chadwick*, 45 Cal.2d 183, 188 [288 P.2d 12, 289 P.2d 242]; *Viglione* v. *City & County of San Francisco*, 109 Cal.App.2d 158, 159-160 [240 P.2d 68]; *Standley* v. *Feather River Pine Mills, Inc.*, 112 Cal.App.2d 101, 104 [245 P.2d 657].)

Immediately following the granting of the Graham motion for nonsuit appellant's attorney moved "to have all of the testimony of Graham and Rogers stricken from the record on the grounds that it is hearsay and have the jury admonished to disregard all such testimony." This was denied and the ruling as to Graham's testimony is now challenged as error. Counsel's argument goes not to the testimony of Graham but to the statements made by him at the time Mrs. Granberg told him about the zoning, his remarks when he said in appellant's presence that it was all her fault, and his repetition of this last remark to the Granbergs as they were leaving appellant's office and on their way to the automobile. The argument is wholly without merit. The first item was a verbal act done in the performance of the agent's transaction of appellant's business, and of course admissible

against her and binding upon her. The statement that "it was all Dorothy's fault," being made in appellant's presence, called for a response from her and her silence took on the character of an admission. The third item probably would have been excluded had objection been made at the time, but that was not done. The presence or absence of Graham as a defendant has no legitimate bearing upon the motion to strike.

Finally, appellant argues that Vernon Beck did not rely or act upon anything done or said by her. The point cannot be sustained. Appellant put the C-2 zone into the information furnished the Real Estate Board, which incorporated the same into its multiple listing, as appellant intended it should do. "The law is well settled that 'representations made to one person with intention that they will be repeated to another and acted upon by him and which are repeated and acted upon to his injury gives the person so acting the same right of relief as if the representations had been made to him directly.' " (*Simone* v. *McKee*, 142 Cal. App.2d 307, 313 [298 P.2d 667].) See also Civ. Code, § 1711; *Crystal Pier Amusement Co.* v. *Cannan*, 219 Cal. 184, 188 [25 P.2d 839, 91 A.L.R. 1357]; 23 Cal.Jur.2d, § 32, p. 78; § 33, p. 79. Beck came into possession of that listing, read it and relied upon it. The legal effect of this was the same as if appellant had made the representation directly to him. Moreover, Engle was appellant's subagent, and he impliedly represented to the buyer that the property was all within the C-2 zone. Appellant, the principal, is of course responsible for that representation. (Civ. Code, § 2351; 2 Cal.Jur.2d, § 69, p. 722.)

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.