[Civ. No. 4092. Fourth Dist. Apr. 25, 1951.]

SHAVARSH CHUCHIAN, Appellant, v. METROPOLITAN
LIFE INSURANCE COMPANY (a Corporation), Re-
spondent.

Siemon & Siemon for Appellant.

Borton, Petrini & Conron for Respondent.

MUSSELL, J.—Plaintiff in this action seeks to recover disability benefits under a policy of life insurance issued to him by the defendant in 1927. The complaint, filed October 10, 1948, contains an allegation that on June 2, 1946, "the plaintiff became totally and permanently disabled by reason of disease, to wit, heart disease, so that he was prevented thereby from engaging in any occupation whatsoever, or per-

forming any work for compensation or profit; and ever since said time the plaintiff has been and now is so totally disabled.'' On January 30, 1950, a trial was had before the court without a jury and from a judgment for the defendant, plaintiff appeals.

The policy involved provides, among other things, that should the insured ''become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months, it (the insurer) will, during the continuance of such disability, (1) Waive the payment of each premium falling due under said policy and this supplementary contract, and, (2) Pay to the insured . . . a monthly income of $10.00 for each $1,000 of insurance or of *commutted* value of instalments, if any, under said policy.''

The trial court found that the policy was issued to plaintiff as alleged in the complaint; that plaintiff paid the premiums due under the insurance contract; that plaintiff did not become totally and permanently disabled; that he had not duly made proof to the defendant of disability and was not entitled to the disability benefits or a waiver of premiums.

The decisive question for our determination is whether there was sufficient substantial evidence to support the findings and judgment of the court.

In determining this question we are bound by the rules announced in *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689], to the effect that in reviewing the evidence, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the judgment if possible; that when a judgment is attacked as being unsupported, the power of the appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the court; that when two or more inferences can be reasonably deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court, and by the rules announced in *Dillard* v. *McKnight,* 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835], that the weight and sufficiency of the evidence, the construction to be put upon it and the inferences to be drawn therefrom were matters for the trier

of the facts as were questions as to the credibility of witnesses and the determination of conflicts and inconsistencies in the testimony.

Resolving all of the conflicting testimony in favor of the respondent, the facts concerning its business affairs and his physical condition as of the time of the trial may be fairly summarized as follows: Plaintiff is a naturalized immigrant, born in Armenia in 1902, and from the time he came to this country in 1920, to the date of the trial, has managed and operated many different businesses. At the time of his first heart attack in 1946, he was engaged in operating a beer distributing and trucking business and in the operation of two farms and a packing shed near Bakersfield. Following this heart attack, plaintiff was in a hospital for about 15 days and thereafter confined in bed between two and three months. In 1948 he had a second heart attack, following which he was in bed for five or six days. After his first illness, plaintiff disposed of the trucking and beer business but retained his interest in the farms and packing shed and was actively engaged in the management of his farming operations from the latter part of 1944 to and including 1949. There was evidence that his farming operations during these years were quite profitable and that he received substantial sums therefrom; that he kept a checkbook of the partnership at home and signed all of the partnership checks; that he took part in the decisions and management of the business, the sale of crops, the sale and leasing of land, the negotiations of oil and gas leases, and made numerous trips to the packing shed and farms.

Motion pictures were admitted in evidence showing plaintiff watering his lawn in June, 1949, driving his car to his farm, packing shed and to the bank. A private investigator hired to observe the actions of plaintiff in January, 1950, testified that plaintiff then stated that he was in the grape business; that the main grape season was for a period of two months each year but that there was always work to be done to the ground and "trees"; that he had to be around to see that the work was done properly, even if he had a superintendent to handle the job.

Dr. Seymour Strongin, a witness produced by plaintiff, testified that he was called when plaintiff had his first attack in 1946; that he examined him on many occasions thereafter and treated him for coronary thrombosis; that in July, 1948, plaintiff suffered a recurrent attack which was diagnosed as

of a milder degree; that as far as his heart was concerned, plaintiff "for the most part got along allright"; that plaintiff's condition was much better at the time of trial than in 1946; that in his opinion plaintiff was able to perform some types of occupation; that if the type of work did not entail any undue stress or strain, emotional or physical, it could be done by plaintiff safely; that many people with attacks no more severe than that of plaintiff have continued their occupations· for many years. He expressed the feeling that "in any of those cases there is some type of work that an individual with a heart attack could do without injuring himself."

Dr. Jack Hayes, whose qualifications were admitted, testified that he examined plaintiff on June 26, 1949; that he obtained a lengthy history of plaintiff's illness and condition; that after conducting a complete examination, he was of the opinion that plaintiff had several conditions that were disabling but the disability was not total and complete; that he was able to do something—"some gainful operation which does not entail unusual or heavy physical exertion"; that plaintiff could substantially perform the duties of some occupation or work; that plaintiff could have done supervisory work in farm management.

■ Total disability, as defined in the quoted portion of the insurance policy involved, has been defined in *Culley* v. *New York Life Ins. Co.,* 27 Cal.2d 187, 191 [163 P.2d 698], in the following language:

"It is settled in this state that total disability within the meaning of this provision is a disability that prevents the insured from 'working with reasonable continuity in his customary occupation or in any other occupation in which he might reasonably be expected to engage in view of his station and physical and mental capacity.' (*Erreca* v. *Western States Life Ins. Co.,* 19 Cal.2d 388, 394, 395 [121 P.2d 689, 141 A.L.R. 68]; *Hurwit* v. *Prudential Ins. Co. of America,* 45 Cal.App.2d 74, 81 [113 P.2d 691].) A finding that the insured is totally disabled is not precluded by the fact that he still goes to his office irregularly and engages sporadically in business matters. 'According to overwhelming authority, the term "total disability" does not signify an absolute state of helplessness but means such a disability as renders the insured unable to perform the substantial and material acts necessary to the prosecution of a business or occupation in the usual or customary way. Recovery is not precluded under a total disability provision because the insured is able to perform

sporadic tasks, or give attention to simple or inconsequential details incident to the conduct of business.' (19 Cal.2d 388, 396.)''

■ The determination of the question of whether the appellant was permanently and totally disabled within the meaning of the terms of the policy before us was a question of fact for the determination of the trial court. As was said in *Erreca* v. *Western States Life Ins. Co.,* 19 Cal.2d 388, 397 [121 P.2d 689, 141 A.L.R. 68] :

''In its final analysis, the question of what amounts to total disability is one of fact. (*Sherman* v. *Continental Casualty Co., supra,* [103 Cal.App. 518 (284 P. 946)] ; *Ives* v. *Prudential Ins. Co.,* 12 Cal.App.2d 306 [55 P.2d 273], and where, as here, the finding of the trial court is supported by substantial evidence, it will not be disturbed upon appeal.''

The credibility of witnesses in the case before us was a matter for the determination of the trial court. (*Ives* v. *Prudential Ins. Co.,* 12 Cal.App.2d 306, 308 [55 P.2d 273].)

■ We conclude that the evidence in the record before us was sufficient to sustain the trial court's finding that the plaintiff was not totally disabled within the meaning of the provision of the policy involved. There was evidence of appellant, his wife and brother to the contrary, but this evidence merely created a conflict. It was shown that the plaintiff had a varied and successful business career; that he worked in a leather factory in Chicago, in a candy shop, restaurant and hotel; that he owned and operated a confectionery in Virginia, then a grocery store, cleaning establishment, and upon arrival in Bakersfield in 1938, became one of three partners in the operation of a refuse and garbage disposal contract of the city of Bakersfield, in connection with which he operated a hog ranch for five years. He attended the highest school in Armenia and apparently has sufficient business ability to engage in occupations which do not require the performance of heavy manual labor.

The evidence was sufficient to support a finding by the trial court that plaintiff's participation in the management of the farming operations was more than casual and was of a substantial and remunerative nature. The testimony of plaintiff's own doctor indicates that the plaintiff was no more disabled than many men who have had similar attacks and supports an inference that he could actively and safely continue the operations of his business affairs to a substantial degree.

Plaintiff asserts that it was not shown that he received any compensation for any work other than the return on his capital investment and that his activities in attending to simple details incident to the operation of the farms were of a kind with those of the claimant in *Fitzgerald* v. *Globe Indem. Co. of N. Y.,* 84 Cal.App. 689, 696 [258 P. 458], where the court held that they did not constitute engaging in business or amount to an occupation. He also cites *Erreca* v. *Western States Life Ins. Co., supra,* as a case in which the claimant, a farmer who suffered injuries which limited him in the performance of his work, was found to be totally disabled.

In the Fitzgerald case the court said, at page 697:

"The ultimate fact to be determined is not what the plaintiff actually did in the way of business duties but what, in the exercise of common care and prudence, he was reasonably able to do. Proof of what he did is merely evidence tending to show his ability to do, just as the opinions of the physicians who testified are evidence tending to show that his disability was or was not total. This expert opinion evidence alone, in view of the nature of plaintiff's affliction, is sufficient to create a substantial conflict, and the finding of the trial court thereon is conclusive."

In that case plaintiff's physicians advised him to desist from his duties in connection with his occupation and testified at the trial that he was totally and continuously unable to transact his business duties without increasing bodily waste and hastening the progress of the disease which caused the disability. The court went on to say, at page 699:

"It cannot be said as a matter of law that the occasional transactions in which he engaged constituted the performance of 'the substantial and material acts of his business or occupation in the usual and customary way' or conclusive proof that, in the exercise of reasonable care and prudence he was able to transact such business duties."

In the Erreca case, *supra,* the court held, at page 397, that in its final analysis, the question of what amounts to a total disability is one of fact.

In both of the last mentioned cases the trial court's findings of fact as to total disability were not disturbed on appeal, and where, as here, the trial court's findings are supported by substantial evidence, its decision is binding upon us.

It is argued that the court erred in admitting profit and loss statements of the farming operations in which plaintiff was interested. We find no merit in this contention. It was

admissible to show extent of the farming operations conducted by the plaintiff and his activities with reference thereto.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 18, 1951. Carter, J., voted for a hearing.