[Civ. No. 18665.   First Dist., Div. Two.   Apr. 18, 1960.]

MATHILDE H. JOHNSON, Appellant, v. CITY OF SAN LEANDRO et al., Respondents.

J. Adrian Palmquist, Patricia J. Smith, John P. Briegleb and Francis T. Cornish for Appellant.

Hagar, Crosby & Rosson, David C. Rust and Appelbaum, Mitchell & Bennett and Bryant M. Bennett for Respondents.

GOOD, J. pro tem.*—Plaintiff appeals from a judgment of nonsuit entered in favor of defendant City of San Leandro and defendant J. W. Lee, a paving contractor, sued herein as

---

*Assigned by Chairman of Judicial Council.

First Doe. This was an action for injuries allegedly sustained as the consequence of a fall when plaintiff stumbled at a point in the 136th Avenue crosswalk at East 14th Street in San Leandro. She contends that she tripped over a rise in the new black-topping of 136th Avenue as it projects across the crosswalk. Defendant city contracted with Lee to resurface said avenue westerly from East 14th Street with a new layer of black-top 1½ inches high covering only the old black-top portion of the street leaving a strip of old concrete pavement 1½ feet wide along the side of 136th Avenue to a point some 30 feet westerly of the west line of East 14th, then widening as it rounds the corner into 14th Street. The curb line is a sweeping curve. The crosswalk is 8 feet wide. Its westerly line (on the avenue side) traverses 11 feet before reaching the new black-topping. Its easterly line (on the street side), because of the curved curb, traverses over 20 feet before reaching the black-top. As a result of the repaving, a difference in elevation variously estimated at 1 1/16th to 1 3/4ths inches existed between the surfaces of the concrete apron and the new black-topping in its projection of some 6 feet into the crosswalk. Its termination (paralleling the west line of East 14th and some 2 feet westerly thereof) was feathered or tapered to virtually zero elevation.

The contract incorporated portions of the standard specifications for resurfacing of the State Department of Public Works, Division of Highways. So far as disclosed by the record the only portion thereof material to the issues of this case is the provision requiring that the ''connection to existing surfacing shall be feathered out to conform with the requirements for smoothness.'' The only direct testimony as to the application of this provision is that the section refers only to the termination of a new surface at its union with old surfaces and not to the side lines of the new surface. The sides were not feathered but bevelled or compacted. The city concedes that there was a difference in elevation as aforesaid and that if this constituted a ''dangerous condition'' it had notice thereof. During construction the city had an inspector present at all times who examined the work during its progress. The work was completed on November 1, 1955, and accepted by the city on November 21, 1955.

The accident occurred on February 23, 1956, while still daylight and with streets dry. Plaintiff testified that she was familiar with the area; that she was walking south on East 14th and as she stepped down off the curb to cross 136th she

"tripped over this, these pebbles that are on the edge of the street"; that when she hit her "toe on this, on these pebbles that are along the street there on this curb or on the rise in the pavement" she stumbled, took four or five running steps trying to keep her balance and fell. On cross-examination she admitted that at her deposition she had theretofore testified that she had taken about one step off the curb, then three to five running steps before falling. Her doctor's case history notes read: "Fall yesterday. Stepped on a pebble . . ." She attempted to explain her deposition as a mistake that she was unaware of until she went back to the scene to look at the curb. In her words, in response to a question about the one step off the curb, she said, "Well I was asked that and thinking it was like any other curb, which you do take one step——" Defense counsel interrupted as did the court, which asked if it was correct that she took one step off the curb. She replied, "No, I didn't. I took more than one." In a later portion of cross-examination she also maintained that she did not stumble until after taking a couple of steps.

While plaintiff presented no witnesses who actually saw her fall, a woman who was crossing the street ahead of plaintiff did testify that she had not reached the sidewalk on the other side when she heard a noise and turned around to see plaintiff lying on the street close to her. Another witness who assisted plaintiff did not see the actual fall but placed her prone position in the street as approximately perpendicular to a manhole that, on the plat exhibit, appears to be about 10½ feet in from the edge of the black-top. The symbols that the reporter's transcript discloses were used to designate his marking on the exhibit fail to appear thereon. However the reference to the manhole is clear and definitely places the location of the fall at a minimum of 10½ feet into the black-top from the rise in question. Another marking on the exhibit (an open circle) appears to place the point perpendicular to the manhole but 3 to 5 feet further into black-top.

Both defendants contend that there is no evidence that the rise in the pavement was the proximate cause of the fall. The testimony in that regard has been summarized above. Defendants argue in support of their contention that it cannot be inferred from plaintiff's testimony that she stumbled or tripped over the rise in the pavement because (a) if she was but one step off the curb when she stumbled, the rise being 11 feet minimum distant from the curb could not have caused the stumble; (b) her testimony as to stumbling on "a pebble"

or "these pebbles" implies that she stumbled on loose pebbles and not on the rise in the black-top; and (c) her failure to herself specifically locate the point of her fall entitles defendants to application of section 2061, subdivision 7 of the Code of Civil Procedure. While these arguments are not unreasonable, they are predicated upon an adverse view and stringent interpretation of the testimony of plaintiff, and depend upon a resolution of contradictions and inconsistencies that, serious though they may be, nevertheless remains a jury question. For reasons stated below an adverse resolution is not compelled as a matter of law. ■ A judgment of nonsuit may be affirmed only if, disregarding conflicting evidence and indulging all legitimate inferences in favor of plaintiff, there is still no evidence sufficiently substantial to support a verdict for plaintiff. (*Blumberg* v. *M. & T. Incorporated*, 34 Cal.2d 226, 229 [209 P.2d 1]; *Wulfjen* v. *Dolton*, 24 Cal.2d 878, 880 [151 P.2d 840].)

■ Defendants' first supporting argument is predicated upon the conflict of plaintiff's trial testimony with her deposition and the statement in her medical history, discounting her attempted explanation. ■ The resolution of conflicting testimony and weight to be given to inconsistencies, if any, in the testimony of a party are the exclusive province of a jury. An excellent discussion of principle is found in *Lasry* v. *Lederman*, 147 Cal.App.2d 480 at pages 488-489 [305 P.2d 663]. ■ It is obvious that if the initial stumble occurred on plaintiff's first step from the curb, the rise in the black-top could not have been a proximate cause of her fall. The crux of the question is whether or not her attempted explanation of her "mistake" and corrected testimony of "several steps" from curb to stumble is inherently implausable or obviously an *ex post facto* version deliberately devised in order to create liability and consequently as a matter of law of such nature as not to be credited by any reasonable person. If so, the nonsuit would be proper. We are, however, of the opinion that this is not the state of the present record. In the first place, the evidence shows that the curb was not the ordinary angular curb and gutter but an elliptical slope into the concrete apron. Some portions of the testimony of other witnesses as well as plaintiff indicate that the word "street" was sometimes used to indicate only the repaved portion of 136th Avenue. Further it must be noted that a prone position after the fall either 10 to 14 feet inside of the resurfaced area is entirely consistent with three to five running steps after stumbling on the particu-

lar rise and perhaps more consistent with that type of accident than a stumble occurring but one step off the curb line. Also the estimated three to five running steps between stumble and fall does not appear to be an afterthought but was mentioned in all of her versions of the accident.

What has been said above concerning defendants' first argument is partial answer to their second, i.e. that a pebble or loose pebbles caused the fall. The phrases in plaintiff's testimony, "this, these pebbles that are on the edge of the street" and "these pebbles that are along the street there on this curb or on the rise in the pavement" as a matter of law do not compel a finding that she slipped on *loose* pebbles. This is so not only because of the inferences that a jury could draw if it believed the location of the actual fall was 10 to 14 feet inside the resurfaced street but because of testimony that the one-half to three-quarter inch aggregate (referred to both as "pebbles" and "gravel") was visible along the edge of the black-topping. Questions of credibility of any witness, as of interpretation, weight and construction of the evidence are matters for the trier of the facts. (*Chuchian* v. *Metropolitan Life Ins. Co.*, 103 Cal.App.2d 760 [230 P.2d 381].)

Defendants' third argument, i.e., that Code of Civil Procedure section 2061, subdivision 7, creates adverse inferences that require the reviewing court to view plaintiff's entire testimony with mistrust, is unsound. The statutory language serves only to emphasize the point that whatever mistrust may arise out of the weaknesses of plaintiff's case is exclusively a matter of jury determination and application.

Defendants' second contention is that even if the evidence might support a finding that plaintiff stumbled on the rise aforesaid the nonsuit was nevertheless properly granted under the minor defect rule of *Barrett* v. *City of Claremont*, 41 Cal.2d 70 [256 P.2d 977]. That case was primarily concerned with the question of the nature of the defect in its relationship to notice as are most of the cases in which the rule is a determinative factor. In *George* v. *City of Los Angeles*, 11 Cal.2d 303 [79 P.2d 723], it was held that the same rule of liability applies in a case where the dangerous or defective condition is the result of plan or construction as in the cases where it results from deterioration or disrepair (*cf.*, p. 307) and, further, that liability under the Public Liability Act of 1923 (Gov. Code, § 53050 et seq.) is predicated upon knowledge (actual or constructive notice) and negligence, the

latter being for the determination of the jury. However the issue of notice is also for the determination of the jury except in those cases wherein the defect is so trivial that reasonable minds could not differ as to whether the condition was such as to charge the municipality with constructive notice of its existence and a consequent duty to repair. A tape measure is not the norm. In *Gentekos* v. *City & County of San Francisco,* 163 Cal.App.2d 691, at page 698 [329 P.2d 943] the court said "The question is not solely one of height or depth. The nature of the defect, that is, whether it is a *constructional* one, one caused by natural causes such as normal wear or tear, the elements, or tree roots, etc., or whether it is an artificial break in the sidewalk, and how long it has existed are all important . . . as is its *location* on the sidewalk" (italics supplied). In the instant case, the alleged defect is *constructional* and is an abrupt rise of between 1 1/16th and 1¾ inches *located* in the crosswalk along a major thoroughfare, where a careful pedestrian may be expected to be more vigilant in observing traffic that may seek entry into the cross street or approach into the major thoroughfare than in looking for surface hazards. Under these circumstances, in the light of all of the facts, it cannot be said that, as a matter of law, the admitted rise is a trivial defect or does not constitute a dangerous and defective condition upon which liability could be predicated. Reasonable minds might well differ as to its nature but its ultimate characterization is for the jury.

For the foregoing reasons our conclusion is that the nonsuit was improper as applied to the question of the liability of the municipality. ▮▮ As applied to the liability of the contractor, our conclusion is that the nonsuit was proper for the reasons below stated.

In this phase of appeal, plaintiff relies most strongly on an extremely generalized application of the holding in *Dow* v. *Holly Manufacturing Co.,* 49 Cal.2d 720 [321 P.2d 736]. In that case a general contractor was held liable for the death of two children by asphyxiation in their home resulting from the installation of a defective gas heater. The gas heater was installed by a plumbing subcontractor. The tragedy occurred some three years after completion, during which time there were several changes of ownership. The decision turned upon the nature of the obligations between a general contractor and an owner and the fact that "[g]as heaters have the inherent capacity for great harm unless they are properly made and installed, especially since their defects are usually concealed

from the occupant of the building and the deadly gas, carbon monoxide, gives no warning of its presence." The court, in a passage crucial to the logic of decision, said (p. 725):

"It has been held that the *owner* of property cannot escape liability for a dangerous condition on his property by having an independent contractor assume the duty of constructing or repairing a building or chattel. [Cases cited.] There is no reasonable distinction between the owner's inability to escape liability and that of the contractor." Plaintiff argues that the effect of this decision is to overrule the general rule as stated in cases such as *Hogan* v. *Miller*, 153 Cal.App.2d 107 at page 111 [314 P.2d 230]: "It is the general rule that when a contractor's work has been completed and accepted by the owner, the contractor is not thereafter liable to third persons for injury suffered by reasons of the condition of the work, even though he was negligent in carrying out the contract." We do not agree. If the court had intended its decision to create a new rule measuring liability of a general contractor rather than defining and clarifying an exception thereto, the facts in the Dow case presented opportunity for it to enunciate a new rule. It did not do so. Further, there is nothing disclosed by the record herein concerning the status and relationship of the City of San Leandro as owner and Mr. Lee as contractor to justify the application of the "analogy of *MacPherson* v. *Buick Motor Co.* [217 N.Y. 382 (111 N.E. 1050, Ann.Cas. 1916C 440, L.R.A. 1916F 696)]" (cf. p. 725, 49 Cal.2d) to place the contractor herein on the same footing as the negligent supplier of goods that are latently or inherently dangerous. Where an accident is the result of work done by a contractor in conformity with plans and specifications or of the use of materials furnished by an owner and is the result of fault in such plans and specifications or defect in such materials, there does exist an entirely "reasonable and obvious distinction between the owner's inability to escape liability and that of the contractor."

The judgment of nonsuit is affirmed as to defendant Lee and reversed as to the city of San Leandro.

Kaufman, P. J., and Draper, J., concurred.