[Civ. No. 23060.    First Dist., Div. Three.    Jan. 25, 1967.]

JOHN MASSEI et al., Plaintiffs and Appellants, v. PETER LETTUNICH et al., Defendants and Respondents.

FUMIE SPINETTI et al., Plaintiffs and Appellants, v. PETER LETTUNICH et al., Defendants and Respondents.

WILLIAM A. ROBISHAW et al., Plaintiffs and Appellants, v. PETER LETTUNICH et al., Defendants and Respondents.

SADAICHI SODA et al., Plaintiffs and Appellants, v. PETER LETTUNICH et al., Defendants and Respondents.

HARVEY E. PATTERSON et al., Plaintiffs and Appellants, v. PETER LETTUNICH et al., Defendants and Respondents.

(Consolidated Cases.)

Wyckoff, Parker, Boyle & Pope, Murphy & Adams, Richard H. Abraham, Lee Pope, Richard W. Kessell, Herbert Wyckoff and Robert A. Bolton for Plaintiffs and Appellants.

Drobac & Britton, Hoge, Fenton, Jones & Appel, Anthony J. Franich, Lewis L. Fenton and John I. Horton for Defendants and Respondents.

BROWN (H. C.), J.—Appellants are adjoining homeowners of residential property in Watsonville who consolidated their actions to recover damages sustained to their property as a result of landslides and subsidence of their land. Respondents are Peter Lettunich, the landowner, and the Malatestas, Andrew and Louis, who did the actual filling and grading work under Lettunich's direction.

The actions were tried on two theories of liability: (1) negligence on the part of all the respondents, and (2) deceit on the part of respondent Lettunich. At the close of appellants' case the trial court granted respondent Lettunich's motion for nonsuit as to the cause of action for deceit and granted respondents Malatestas' motion for nonsuit as to the cause of action for negligence. The jury found against respondent Lettunich on the negligence count and awarded damages to appellants. Following entry of judgment, respondent Lettunich moved for judgment notwithstanding the verdict and for new trial. The trial court granted respondent Lettunich's motion for judgment notwithstanding the verdict and granted Lettunich a new trial, specifically on the ground of insufficiency of the evidence, but not to the exclusion of any of the other grounds stated in Code of Civil Procedure section 657.

L. L. Trent & Son, the building contractors who constructed appellants' homes, have been eliminated from this action by reason of the jury verdict in their favor from which no appeal was taken.

This appeal is (1) from the judgment of nonsuit in favor of respondents Malatesta upon the cause of action for negligence, (2) from the judgment of nonsuit in favor of respondent Lettunich on the cause of action for deceit, (3) from the judgment notwithstanding the verdict against respondent Lettunich, and (4) from the order granting Lettunich a new trial.

*The Facts*:

Respondent Lettunich owned a parcel of sloping hillside land in the area of Watsonville. He employed one Frank B.

Lewis, a licensed engineer and surveyor, to lay out the lot plans for a residential subdivision. Respondents Malatesta were engaged to grade and place fill on the slope but were unaware of the intended use of the land. They were paid on an hourly basis with additional compensation for the use of their equipment. Lettunich inspected the property three or four times per day and directed the obtaining and placing of the fill. Although advised to compact the fill, Lettunich permitted only such compaction as occurred when the land was traversed with the heavy fill equipment operated by the Malatestas. No drains were placed on the filled land. After the completion of the fill, Lettunich employed the engineering firm of Bowman and Williams to make tests of the land for F.H.A. purposes. Their report recommended that the proposed foundations for the new homes be extended one foot into the original ground. Lettunich eventually engaged Trent & Son to construct the homes. Trent agreed to purchase the lots for $2,900 each, giving a note and deed of trust on the lots as the consideration. The notes would not become due until the homes had been constructed and sold. Trent & Son constructed the homes in question and they were sold to appellants in 1962. The Trents testified that they were not informed and did not know that they were erecting the homes on filled land. They also were ignorant of the report of the engineering firm of Bowman and Williams, and constructed the foundations an average of 8 inches into the original ground rather than 12 inches as recommended. There was evidence that the failure to extend the foundations deeper may not have prevented the slide or subsidence of the land, but it would have lessened the damage.

At the end of 1962 and early in 1963 the rear portion of appellants' lots started to subside greatly. All appellants suffered extensive damage requiring the employment of engineers and contractors to prevent further subsidence and to restore their property.

1. *Did the Court Err in Granting Nonsuit to the Respondents Malatesta on the Cause of Action for Negligence?*

■ It appears that there was no substantial evidence which would have supported a verdict against the Malatestas for negligence, and therefore, a nonsuit was properly granted. (*Reuther* v. *Viall*, 62 Cal.2d 470, 474-475 [42 Cal.Rptr. 456, 398 P.2d 792].) The issue is controlled by the cases of *Johnson* v. *City of San Leandro*, 179 Cal.App.2d 794 [4 Cal.Rptr. 404], and *Barnthouse* v. *California Steel Buildings Co.*, 215

Cal.App.2d 72 [29 Cal.Rptr. 835]. In *Johnson*, the court said: "Where an accident is the result of work done by a contractor in conformity with plans and specifications or of the use of materials furnished by an owner and is the result of fault in such plans and specifications or defect in such materials, there does exist an entirely 'reasonable and obvious distinction between the owner's inability to escape liability and that of the contractor.' " (P. 801.) The rule is also stated by Dean Prosser, who says (Prosser on Torts [3d ed. 1964] p. 695): ". . . A series of decisions have applied [the analogy of *MacPherson* v. *Buick Motor Co.*] to building contractors, placing them upon the same footing as sellers of goods, and holding them to the general standard of reasonable care for the protection of anyone who might foreseeably be endangered by their negligence, even after acceptance of the work. This is now the majority rule, not only as to contractors doing original construction work, but also as to those doing repair work or installing parts, as well as supervising engineers and architects."

"One important limitation recognized in several cases is that the contractor is not liable if he has merely carried out carefully the plans, specifications and directions given him, since in that case the responsibility is assumed by the employer, at least where the plans are not so obviously defective and dangerous that no reasonable man would follow them." (See also Annotation: Contractor-Liability to Third Person, 58 A.L.R. 875.)

Although there were no written plans or specifications in the present case, no reason appears why they should have been required. The rationale is simply that the employer has assumed the responsibility. It is also noteworthy that the Malatestas did not even occupy the status of contractors, as did the defendants in *Johnson* or *Barnthouse* cases, *supra*. On the contrary, they were in the position of mere employees, being paid by the hour (except for their equipment), and directed in their duties by Lettunich who constantly inspected their work.

2. *Did the Court Err in Granting a Nonsuit to The Respondent Lettunich on the Cause of Action for Deceit?*

■ Appellants contend that Lettunich was guilty, not of an affirmative deceit, but of a negative one; that is, he failed to disclose the fact that appellants' land had been filled. Deceit, of course, may arise from mere nondisclosure (Civ. Code,

§§ 1709, 1710; 23 Cal.Jur.2d, Fraud and Deceit, § 45, p. 106).

■ Lettunich failed to disclose to the Trents or to appellants that the lots were on filled land. Equally important was nondisclosure of the Bowman and Williams' engineering report relative to the proper depth of the foundations. These facts affected to a material degree the value or desirability of the property. It also prevented either the Trents or appellants from taking timely precautionary measures to protect this property. (*Rothstein* v. *Janss Investment Corp.*, 45 Cal.App. 2d 64 [113 P.2d 465]; *Clauser* v. *Taylor*, 44 Cal.App.2d 453 [112 P.2d 661]; *Burkett* v. *J. A. Thompson & Son*, 150 Cal. App.2d 523 [310 P.2d 56].)

■ The contention of Lettunich that he had no contact with appellants and that therefore it was impossible for him to be guilty of deceit toward them is without merit. "The law is well settled that 'representations made to one person with intention that they will be repeated to another and acted upon by him and which are repeated and acted upon to his injury gives the person so acting the same right to relief as if the representations had been made to him directly.' " (*Simone* v. *McKee*, 142 Cal.App.2d 307, 313-314 [298 P.2d 667]; *Wice* v. *Schilling*, 124 Cal.App.2d 735, 745-746 [269 P.2d 231]; *Cohen* v. *Citizens Nat. Trust etc. Bank*, 143 Cal.App.2d 480, 484 [300 P.2d 14]; *Odell* v. *Frueh*, 146 Cal.App.2d 504, 508 [304 P.2d 45, 76 A.L.R.2d 345]; *Granberg* v. *Turnham*, 166 Cal.App.2d 390, 398 [333 P.2d 423]; *Harold* v. *Pugh*, 174 Cal.App.2d 603, 608-609 [345 P.2d 112].) No reason appears why this same rule should not be applicable to nondisclosures as well as misrepresentations. The jury could easily have found that Lettunich, in failing to disclose to the Trents that the lots had been filled, did so because he was fearful that the prospective purchasers would in turn learn that fact and be dissuaded. Lettunich, of course, had a pecuniary interest at stake because it was agreed that the Trents' notes as payment for the lots would not be due and he would not be paid until the residences were sold.

■ Disregarding conflicting evidence and giving appellants' evidence all the value to which it is legally entitled and indulging in every legitimate inference that could be drawn therefrom in appellants' favor (*Reuther* v. *Viall*, *supra*), there was substantial evidence to support a finding that each of the elements of actionable deceit was present. (*Lingsch* v.

*Savage,* 213 Cal.App.2d 729, 738 [29 Cal.Rptr. 201, 8 A.L.R. 3d 537].)

3. *Did the Court Err in Granting Judgment Notwithstanding the Verdict on the Cause of Action for Negligence?*

■ There was evidence that Lettunich had knowledge of the instability of the land and that actual subsidence had occurred on one portion of the property prior to the construction of appellants' homes. It was admitted that no drainage had been provided. The engineer's report recommending the depth of foundations had not been disclosed to either the builder or to appellants. There was evidence that Lettunich had been advised that further compaction of the fill was necessary.

Appellants offered the testimony of an expert on the standards of practice for filling land in the Watsonville area. He was familiar with the area involved and described it as a wet area or drainage area. On this particular ground, the standard of care which would have been observed by competent grading contractors would have been to (1) strip all vegetation and unsuitable ground from both the "fill area" and the "borrow area"; (2) prepare the fill area by "benching and keying the toe of the slopes"; (3) provide drainage; and (4) compact the fill.

Appellants and respondents both offered expert testimony on the cause of the subsidence. A soil engineer testified for appellants. His firm made inspections and planned and supervised the reconstruction work done after the slide. His opinion was that the placing of the fill, as done here, blocked the natural drainage of the hillside, and that over a period of years underground water built up until the hydrostatic pressure became so great that it forced the landslide. He further testified that the damage would not have been so great had the foundations extended a foot into the original soil, as recommended by Bowman and Williams' engineering report.

It was for the jury to determine if Lettunich used reasonable care in placing the fill and also to determine the cause of the subsidence and slide. There was conflicting evidence on these issues, but the jury's finding that Lettunich was negligent is supported by substantial evidence. The trial court erred in granting the judgment notwithstanding the verdict.

4. *Did the Trial Court Err in Granting Respondent Lettunich's Motion for New Trial?*

■ The trial judge may weigh the evidence and the inferences to be drawn therefrom, and when he grants a motion for

new trial his decision will not be disturbed in the absence of an abuse of discretion. (*Reuther* v. *Viall, supra*; 3 Witkin, Cal. Procedure (1954), pp. 2059-2061.) ██ Applying this test here, where the parties produced conflicting evidence, there does not appear to be reason for this court to reverse the action of the trial court in granting a new trial.

As to respondent Lettunich, the judgment of nonsuit on the cause of action for deceit and the judgment notwithstanding the verdict on the cause of action for negligence are reversed. The judgment of nonsuit as to Louis and Andrew Malatesta is affirmed with costs. The order granting the motion for new trial on behalf of Lettunich is affirmed and a new trial is ordered as to both causes of action, for deceit and for negligence. Plaintiffs to recover their costs on appeal from respondent Lettunich.

Draper, P. J., and Salsman, J., concurred.