Filed 9/22/25  Lee v. City of Los Angeles CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JESSICA LEE, | B335899 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV26475) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Anne Hwang, Judge.  Affirmed.

Gusdorff Law and Janet Gusdorff; Law Offices of Richard D. Hoffman and Richard D. Hoffman for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs and Merete Rietveld, Deputy City Attorneys, for Defendant and Respondent.

_____

Jessica Lee tripped and fell on a public sidewalk in the City of Los Angeles (City).  She filed this action against the City under Government Code section 835, asserting a claim of dangerous condition of public property.[1]  The City moved for summary judgment.  It argued that the defect in the sidewalk was trivial and not a dangerous condition as a matter of law.  The trial court agreed and granted summary judgment in the City's favor.  We conclude that there are no triable issues of material fact as to whether the sidewalk defect was trivial and affirm the trial court's ruling.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2017, Lee owned a mini-market at the corner of Sixth Street and Union Drive in Los Angeles.  She had worked at the market 7 days a week for approximately 16 years.  On the evening of September 13, Lee left the market and walked to a food vendor near the corner of Sixth Street and Union Drive.  After purchasing food, she walked back to her store, heading "north on Union Drive several feet to enter into the mini-mart parking lot."  It was around 5:00 p.m.  This was Lee's first time walking on this "particular sidewalk area, having always exited the mini-mart through the parking lot exit by car."

At a deposition in this case, Lee testified that it was dark outside at the time of the incident.  However, "the artificial light

_____

[1]     All further undesignated statutory references are to the Government Code.

The complaint also asserted a cause of action for negligence, which the City challenged in its summary judgment motion.  Lee did not address this claim in her opposition to summary judgment below and it is not at issue on appeal.

2

in the parking lot was very bright."  There was no rain or fog.  Lee could see the sidewalk in front of her.  She tripped and fell on the "broken and uneven sidewalk," fracturing her left knee.  Her "shoe tripped and caught on something."  When shown photos of the sidewalk at her deposition, Lee testified: "I can see the hole where I tripped and fell.  I see the place where I fell."  She identified a portion of raised, uplifted sidewalk where she estimated she tripped, which counsel circled in two photographs.

In July 2019, Lee filed a complaint against the City, alleging "she fell due to cracked and uneven concrete public sidewalk."  She asserted claims for negligence and dangerous condition of public property.

The City moved for summary judgment, arguing the sidewalk's defect was trivial as a matter of law.  The City offered testimony and photographic exhibits from Lee's deposition depicting the area where she fell.  It also submitted declarations from the acting superintendent over street maintenance for the City's Bureau of Street Services and from the chief investigator for the Los Angeles City Attorney.  Both conducted searches of their respective offices' records.  The acting superintendent looked for complaints and repair requests regarding the area of the sidewalk where Lee tripped.  The chief investigator searched the Los Angeles City Claims Database.  Neither discovered any complaints, claims, or requests for repair of the sidewalk at issue, aside from Lee's claim.

The City also submitted an expert declaration from Mark Blanchette, Ph.D., a biomechanics consultant.  Based on Lee's deposition testimony, the photograph exhibits from her deposition identifying the portion of the sidewalk where she fell, and his inspection of the area, Blanchette opined:

3

"The subject condition consists of an elevation change due to a crack in the concrete that generally runs [e]ast to [w]est across the width of the sidewalk, with the concrete on the [n]orth side of the crack elevated relative to the concrete on the [s]outh side. The concrete along the crack was firm and stable. Based on the area circled in Plaintiff's deposition exhibits #3 and #4, I used a carpenter square to measure the elevation change along the crack at several locations in that area." The greatest elevation change Blanchette measured was "approximately 1/2 inch."

Blanchette reviewed a photograph Lee produced that "was taken such that the start of the tape measure was down within the crack and not relative to the level of the adjacent concrete to the [s]outh." This photo depicted an elevation change of one and one-quarter inches. "[A]s a pedestrian is walking [n]orth, as Plaintiff was at the time of the incident, the foot will be on top of the concrete to the [s]outh of the crack before moving forward toward the elevation change and therefore any measurement of the elevation change should be relative to that change in grade . . . ." "Thus, Plaintiff's measurement of the elevation change at approximately 1 1/4 inches as depicted in Exhibit E greatly overestimates the condition and is not representative of the elevation change a pedestrian encounters when walking [n]orth."

Blanchette further opined that, based on Lee's testimony that the incident took place at approximately 5:00 p.m., the time of sunset on September 13, 2017, and his inspection "under substantially similar lighting conditions to those at the time of the incident," there was "ample lighting" to detect the approximately one-half inch elevation change. He based this conclusion on "literature regarding obstacle detection and

4

illumination" regarding pedestrians over 50 years old and what is required to avoid "trip hazards." At the time of the incident, Lee was 62 years old.

In her opposition, Lee argued the sidewalk's defect was not trivial. She submitted an expert declaration from Gary Gsell, a consultant with 46 years of experience working for the City's Bureau of Street Services. After he inspected the site in March 2022, reviewed photos Lee's husband took shortly after the incident, and consulted images from Google Earth, Gsell opined:

"The incident occurred when Ms. Lee tripped over an uplift of 5/8 inch, with a second hole close to the uplift that measured 7 inches by 3 inches and was 1 1/4 inches deep." Gsell observed that the "sidewalk area surrounding the location was in a dirty and unkept condition," and that there were "many other areas of [the] sidewalk as well as street curbs that were also in disrepair." Gsell declared the site where Lee tripped did not "meet Engineered City Standards, nor does it comply with asphalt repair standards [f]or the Bureau of Street Services Manual." The condition of the sidewalk also violated the "American[s] with Disabilities Act [(ADA)], which requires that pedestrian pathway surface shall not have vertical displacement greater tha[n] 1/2 inch."

Lee also submitted a declaration stating that the evening of the incident was the first time she had walked on that area of the sidewalk; it was nighttime, with "dim streetlight illumination of the sidewalk"; and before her fall, she "did not see, nor was [she] aware of the broken and uneven sidewalk cracks."

Lee additionally submitted an excerpt from the deposition of the City's designated Person Most Knowledgeable, stating that now that he was aware of the sidewalk's defect, he would submit it for repairs.

The trial court granted summary judgment. It found the City had set forth sufficient evidence to establish that the sidewalk's defect was trivial as a matter of law, and Lee had not established any triable issues of material fact as to the trivial nature of the defect. The trial court observed that the parties' experts had arrived at similar measurements for the uplift, with both experts also measuring one and one-quarter inches from the bottom of the nearby hole or crack. Thus, the court found that the relevant height differential measured, at most, one and one-quarter inches. The court found no aggravating factors. It found no evidence that the sidewalk's crack had jagged edges, that anything obstructed Lee's view of the defect at the time of the incident, or that any other accidents had ever occurred on the sidewalk.

Lee timely appealed.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper only when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

A defendant moving for summary judgment has the initial burden of establishing that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2);

6

*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.) If the defendant meets this initial burden, the burden shifts to the plaintiff to produce evidence showing that a genuine issue of material fact exists, based on specific facts. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) A triable issue exists if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.)

" ' " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' [Citation.]" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

## II. The Trial Court Properly Granted Summary Judgment

### A. The trivial defect doctrine

Section 835 " 'sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property.' [Citation.]" (*Restivo v. City of Petaluma* (2025) 111 Cal.App.5th 267, 274.) To recover under section 835, a plaintiff must prove a dangerous condition existed on the property at the time of the injury. (§ 835, subds. (a), (b); *Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 653.) Section 830 defines dangerous condition as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property

7

or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2.) A corollary to this rule is that, on appeal, this court reviews the photographic evidence in the light most favorable to the plaintiff. (*Stack v. City of Lemoore* (2023) 91 Cal.App.5th 102, 111 (*Stack*), citing *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 15, 24 (*Kasparian*) ["the reviewing court takes a fresh look at the photographs relied upon by the trial court and examines the photographs de novo"].)

"Thus, 'a property owner is not liable for damages caused by a minor, trivial, or insignificant defect' on its property. [Citation.] This principle, referred to as the 'trivial defect doctrine' or the ' "trivial defect defense," ' is not an affirmative defense, but 'an aspect of duty that a plaintiff must plead and prove.' [Citations.] That is so because a property owner's duty of care 'does not require the repair of minor or trivial defects.' [Citations.]" (*Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 757 (*Nunez*).) In the context of public sidewalks, a "[c]ity does not have a duty to protect pedestrians from every sidewalk defect that might pose a tripping hazard— only those defects that create a *substantial* risk of injury to a

8

pedestrian using reasonable care." (*Id.* at p. 759.)

" '[W]hether there is a dangerous condition may be resolved as a question of law if reasonable minds can come to but one conclusion. [Citation.] "[I]t is for the court to determine whether, as a matter of law, a given defect is not dangerous. This is to guarantee that cities do not become insurers against the injuries arising from trivial defects." ' [Citation.]" (*Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 755.)

California courts employ two very similar tests to determine whether a defect is trivial. The majority of courts, including this one, have followed a two-part test. "First, we review evidence of the ' "type and size of the defect." ' [Citation.] If that analysis reveals a trivial defect, we then consider ' "evidence of any additional factors [bearing on whether the defect presented a substantial risk of injury]. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person," ' then we will ' "deem the defect trivial as a matter of law." ' [Citations.]" (*Nunez, supra,* 81 Cal.App.5th at p. 758; see also *Miller v. Pacific Gas & Electric Co.* (2023) 97 Cal.App.5th 1161, 1167 (*Miller*); *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 567–568 (*Stathoulis*).)

In *Stack, supra,* 91 Cal.App.5th at page 111, the court described the appropriate test as a "holistic, multifactor analysis." *Stack* departed from the "commonly recited two-step framework" to the extent it "suggests that defect size alone can preclude a legal conclusion of triviality when the size is great enough," and interpreted section 830.2 to require the consideration of " 'the surrounding circumstances' in every case." (*Stack,* at p. 114.)

9

Under either approach, we conclude the sidewalk defect in this case is trivial as a matter of law.

**B.  Analysis**

### a.  The type and size of the uplift reveal a trivial defect

While "size alone is not determinative," it is the " 'most important . . . factor[ ]' " for determining whether a defect is trivial as a matter of law.  (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 568; *Stack*, *supra*, 91 Cal.App.5th at p. 111.)  "Several decisions have found height differentials of up to one and one-half inches trivial as a matter of law."  (*Stathoulis*, at p. 568.)  "However, it is also true that as 'the size of the depression begins to stretch beyond one inch the courts have been reluctant to find that the defect is not dangerous as a matter of law.' "  (*Ibid.*, quoting *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 726 (*Fielder*).)

The City's expert, Blanchette, observed an elevation change due to a crack in the concrete that "generally" runs across the width of the sidewalk, with the concrete on the north side elevated relative to the concrete on the south side.  This description is consistent with the parties' photographs of the defect.  In addition, the photos show that at the far left of the sidewalk, and to the left of the area Lee estimated she fell, the crack began to turn diagonally northwest.

Blanchette measured the elevation change Lee would have encountered when walking north, and specifically in the area circled on Lee's deposition exhibits.  The greatest elevation change was approximately one-half inch.  Blanchette measured one and one-quarter inches if the tape measure was "down within the crack and not relative to the level of the adjacent concrete to

10

the south." He found this to be a critical detail because it is undisputed that Lee was walking north on the sidewalk. According to Blanchette, one and one-quarter inches was "not representative of the elevation change a pedestrian encounters when walking North."

Lee's expert, Gsell, declared that "Lee tripped over an uplift of 5/8 inch." He also described "a second hole close to the uplift that measured 7 inches by 3 inches and was 1 1/4 inches deep." Accordingly, both experts agreed that the crack or hole was at most one and one-quarter inches deep, but the uplift Lee tripped over was at most five-eighths of an inch (.625 inches). While indicating that the hole was close to the uplift, Gsell offered no further opinion suggesting the hole contributed to the incident. When she identified the location of the defect that caused her to trip, Lee herself indicated an area that was merely next to the hole.

As to the five-eighths of an inch uplift, "[s]idewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law." (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1107 (*Huckey*).) We similarly conclude the five-eighths of an inch uplift could only reasonably be deemed trivial. (See, e.g., *Nunez, supra*, 81 Cal.App.5th at pp. 759–760 [maximum three-quarter-inch sidewalk height differential was trivial]; *Cadam v. Somerset Gardens Townhouse HOA* (2011) 200 Cal.App.4th 383, 385–386 [maximum seven-eighths-inch walkway height differential was trivial]; *Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 396 [maximum three-quarter-inch sidewalk height differential measured from adjoining section of concrete was trivial]; *Fielder, supra*, 71 Cal.App.3d at pp. 725–726 [three-

quarter-inch sidewalk height differential was trivial]; *Beck v. City of Palo Alto* (1957) 150 Cal.App.2d 39, 43–44 [no liability for sidewalk elevation differential up to one and seven-eighth inch].)

Moreover, even if we were to assume that Lee's estimate of where she tripped was imprecise and could have incorporated the area left of where she circled, and that it was physically possible for her to trip from the bottom of the crack or hole, a height differential of one and one-quarter inches may still be trivial. For example, in *Huckey*, the court found a sidewalk defect trivial that was "vertically uneven between two concrete panels" and the height differential was at most "one and 7/32 inches, or 1.21875 inches." (*Huckey*, *supra*, 37 Cal.App.5th at pp. 1095, 1110.) This is substantially similar to the one and one-quarter inches depth at issue here. "[T]here is no firmly fixed 'arbitrary measurement in inches below which a defect is trivial as a matter of law and above which it becomes a question of fact whether or not the defect is dangerous.' [Citation.]" (*Stack*, *supra*, 91 Cal.App.5th at p. 113.) But here, as discussed in greater detail below, there was no evidence of other factors that would render a differential of one and one-quarter inches non-trivial.

In a single sentence in her opening brief, Lee appears to argue that the defect could not be trivial as a matter of law because its size violated ADA standards and the City's "Engineered City Standards and Bureau of Street Services Manual." This does not change the analysis. This court rejected a similar argument in *Nunez*, *supra*, 81 Cal.App.5th 749.

In *Nunez,* the plaintiff relied on evidence that the City of Redondo Beach's policy was to repair sidewalk offsets greater than a half-inch, and it repaired the defect at issue. We rejected the plaintiff's argument that because the height differential "met

12

the criteria for repair under the City's policy, it cannot be said that no reasonable person could find the offset created a substantial risk of injury," and therefore it was a dangerous condition under sections 830 and 830.2. (*Nunez*, *supra*, 81 Cal.App.5th at p. 758.) We reasoned, " 'It is impossible to maintain heavily traveled surfaces in perfect condition. Minor defects such as the [nonalignment] in [the City's sidewalk] inevitably occur, and the continued existence of such [nonalignments] without warning or repair is not unreasonable.' [Citation.] Moreover, in the absence of a constitutional requirement, only the Legislature can create public entity liability." (*Ibid*.; see also *Miller*, *supra*, 97 Cal.App.5th at p. 1168 [plaintiff's reliance on city guidance requiring repair of height differentials of over one-half inch was unpersuasive without evidence that is the proper standard in California for safe sidewalks].)

The evidence here establishes that the height differential was at most five-eighths of an inch at the tripping point and one and one and one-quarter inches from the bottom of the nearby crack or hole. This factor, which is the most important of our analysis, indicates that the defect was trivial. We therefore consider the presence of any aggravating factors. " ' "If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person," ' then we will ' "deem the defect trivial as a matter of law." ' [Citations.]" (*Nunez*, *supra*, 81 Cal.App.5th at p. 758.)

13

### b. Lee failed to show a triable issue of fact as to aggravating factors rendering the defect non-trivial

We consider "whether there were any broken pieces or jagged edges in the area of the defect, whether any dirt, debris or other material obscured a pedestrian's view of the defect, the plaintiff's knowledge of the area, whether the accident occurred at night or in an unlighted area, the weather at the time of the accident, and whether the defect has caused any other accidents. [Citations.]  In sum, '[a] court should decide whether a defect may be dangerous only after considering all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would suggest.' [Citation.]" (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105; see also *Stathoulis*, *supra*, 164 Cal.App.4th at pp. 567–568.)  We note that when courts have found height differentials over one inch not trivial as a matter of law, generally other aggravating factors were present. (See, e.g., *Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 228–229 [height of three-sixteenths to one and one-half inches and width of approximately 30 inches, with rough texture of asphalt, an uneven surface, and a jagged edge with broken off pieces of asphalt]; *Barone v. City of San Jose* (1978) 79 Cal.App.3d 284, 291 [one inch height differential with irregular and jagged break]; *Johnson v. City of San Leandro* (1960) 179 Cal.App.2d 794, 797–798 [height differential of one and three-quarter inches located in a crosswalk; plaintiff stepped down off nearby curb and tripped on pebbles].)

### 1. Nature of the defect

We must " 'view the intrinsic nature and quality of the defect to see if, for example, it consists of the mere nonalignment

14

of two horizontal slabs or whether it consists of a jagged and deep hole.' " (*Kasparian, supra*, 156 Cal.App.4th at p. 27.) In her opening brief, Lee simply asserts that the uplift had a "jagged shape." Jagged edges increase the risk that a pedestrian will trip. (*Stack, supra*, 91 Cal.App.5th at p. 117 ["A fact finder could reasonably view the roughness of the lip as increasing the risk of catching a pedestrian's toe as they cross."].)

The trial court determined that the crack lacked jagged edges. We agree. The photographs depict a relatively straight line at the section of uplift where Lee estimated she fell. (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 928 ["photographs of the crack submitted by both sides demonstrate that the crack is minor and any irregularity in shape is minimal"].) Neither party's expert described the crack or uplift as having jagged edges. The City's expert further stated that the concrete along the crack was firm and stable.

For the first time in her reply brief, Lee asserts that the "presence of the hole is a difference maker here," and the trial court erred by focusing on the "uplift differential from a simple crack and not from an iPhone-sized hole with a 1 1/4 inch depth that is adjacent to the crack." We note that Lee's opening brief fails to make a similar argument and, in fact, also refers to the defect as "*an uplift* of 1 1/4 inches with jagged edges." In any event, exercising our discretion not to deem the argument forfeited, we are not persuaded. As referenced above, Lee testified, and her expert declared, that she tripped "over an uplift." In Lee's reply brief on appeal, she identifies the location of the hole with a circle on a photo, which appears considerably apart from the cracked portion of the sidewalk where she estimated she fell and from the one and one-quarter inches

15

measurement of the depth of the crack. On the evidence presented, no reasonable factfinder would have a basis to conclude that the hole contributed to Lee's fall or that it rendered the uplift where Lee tripped more dangerous.

This case thus stands in stark contrast to *Stathoulis*, *supra*, 164 Cal.App.4th 559, on which Lee relies. In *Stathoulis*, the presence of "three, irregularly shaped and sizeable holes of about an inch deep" created a triable issue of fact as to whether a defect was trivial. (*Id*. at p. 569.) "The southernmost gouge was 20 inches long, with a maximum width of six and one-half inches and a maximum depth of one inch. The middle gouge was 19 inches long, had a maximum width of four and one-half inches, and was half an inch deep. The northernmost hole was 24 inches long, a maximum of five inches wide, and had a maximum depth of one inch. The holes were one to four inches apart." (*Id*. at p. 564.) The holes were not only significant in size, but their proximity to each other contributed to the plaintiff's fall. When the plaintiff's shoe "caught and became embedded" in one of the depressions, she tried to use her other foot to regain balance; however, it became caught in two other holes. (*Id*. at p. 653; see *id*. at p. 654.)

There is no such evidence here. Lee does not offer any evidence that the presence of the hole near the area of uplift impacted her fall or contributed to the dangerousness of the area of uplift where she testified that she tripped. Further, there is no evidence that the uplift area was jagged, as Lee asserted in her opening brief.[2]

---

[2] Lee also asserts for the first time in her reply brief that the crack has a "sharp" corner and the "massive length" of the crack

16

## 2.     View of the defect

Lee failed to raise a triable issue of fact regarding whether insufficient lighting or visual or physical obstructions made the defect more dangerous.

The City's expert opined that at the time and date of the accident, the light would have been sufficient for a pedestrian of Lee's age to detect and avoid the defect.  At Lee's deposition, when the City's counsel asked Lee if it was too dark to see the sidewalk, she replied, "I saw the sidewalk."  She testified that light in an adjacent parking lot was bright, but later said in her declaration that the streetlight was "dim."  It was not raining or foggy at the time.  Lee's evidence did not create a triable issue of fact as to whether the lighting was sufficient for her to see the defect.

While Lee stated in her declaration that she did not see the "broken and uneven sidewalk cracks," she did not say in her declaration or deposition that anything obscured her view.  While Lee's expert observed that the area surrounding the location was "dirty and unkept," there was no evidence connecting the general condition of the surrounding area to Lee's ability to perceive the defect.  (Cf. *Stack*, *supra*, 91 Cal.App.5th at p. 117 ["pine needles obstructed the base of the first defect, making it difficult to judge the full height of the rise between the slabs of sidewalk"].) Indeed, the photos Lee's husband took "immediately following the incident" show an unobstructed sidewalk.  There is no trash, other debris, or anything on the sidewalk in the near vicinity of

---

rendered it not trivial.  Because she did not assert these as aggravating factors in her opening brief, we decline to consider these arguments.  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158.)

the crack.  And Lee testified that she saw the sidewalk.

Given this evidence, "the height differential would have been in plain sight and, therefore, would have been avoidable to a pedestrian walking on the sidewalk and approaching the height differential 'with due care' at the time plaintiff fell." (*Huckey*, *supra*, 37 Cal.App.5th at p. 1109; see also *Miller*, *supra*, 97 Cal.App.5th at p. 1168 [finding "unobscured vertical misalignment of less than one inch, a nighttime urban location illuminated by artificial lights from multiple sources" a trivial defect].)

### 3.	Lack of prior accidents

It is undisputed that there is no evidence of prior accidents in the area where Lee tripped and fell.  Lee is correct that the absence of prior incidents is not dispositive. (*Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337, 1346.)  However, prior accidents are indicative of a defect's dangerousness. (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 568.)  The absence of evidence of prior accidents on the same area of the sidewalk "is simply one factor that weighs in favor of dubbing the condition trivial as a matter of law." (*Stack*, *supra*, 91 Cal.App.5th at p. 119.)

### 4.	Lee's familiarity with the area

Finally, Lee contends she was not familiar with the cracked area of the sidewalk before her fall.  Her declaration states she usually walked through the market's parking lot, rather than this portion of the sidewalk.  While it is undisputed Lee worked nearby for 16 years, the City has not presented any evidence to contradict Lee's statement.  However, lack of familiarity with the location of the defect is not a definitive factor and we note that courts have found defects trivial without considering individual familiarity as part of their analysis. (See, e.g., *Huckey*, *supra*, 37

18

Cal.App.5th at pp. 1105, 1108–1110 [listing plaintiff's "knowledge of the area" as a factor but not actually considering it, and finding the defect trivial].) Indeed, at least one court has found individual familiarity with an area to be an irrelevant consideration. (*Stack*, *supra*, 91 Cal.App.5th at pp. 119–120.) Even considering the factor, Lee failed to show that her lack of familiarity with the site of the defect suggested it was sufficiently dangerous to a reasonably careful person that a trier of fact could find it non-trivial in the absence of any other aggravating circumstances.

### 5. Dangerousness viewed holistically

Lee tripped over a height differential of, at most, one and one-quarter inches. Neither she nor her expert proffered evidence that Lee stepped in a hole. Lee saw the sidewalk. She did not provide evidence that the defect was obscured from her view by insufficient lighting or any physical impediment. No other portion of the sidewalk was cracked or broken. The area where Lee tripped was a straight crack. There is no evidence that the defect caused any other accidents. When viewed holistically, a reasonable factfinder could only conclude that a pedestrian exercising due care would have been able to avoid the defect, and the sidewalk did not present a substantial risk of injury when used with due care in a reasonably foreseeable manner. (§§ 830, 830.2.)[3] The trial court properly found the sidewalk's defect trivial as a matter of law.

---

[3] Because we conclude, as the trial court did, that the defect was trivial as a matter of law, we also do not address Lee's arguments about the City's notice of the alleged dangerous condition of the sidewalk.

19

## DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.